PAUL E. MERRILL
*vs.*
MAINE PUBLIC UTILITIES COMMISSION

Kennebec.   Opinion, May 9, 1958

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., sat at argument but retired before the opinion was adopted.

*Frank P. Preti,* for plaintiff.

*Milton A. Beverage,* for Cole's Express.
*William M. Houston,* for B. & A. R. R. Aroostook Valley R. R. and Canadian Pacific R. R.
*Scott W. Scully,* for Maine Central R. R.
*Douglas M. Morrill,* for the Commission.

WEBBER, J. The petitioner is a motor contract carrier operating under a permit issued by the Public Utilities Commission to transport for hire certain types of freight. He specializes in the transportation of bulk petroleum products in tank equipment. His petition applied for further authority to transport petroleum products in bulk in tank trucks and semi-trailer tanks for Socony Mobil Oil Company, Inc. from Bangor, Brewer, Hampden and Searsport to its customers at Limestone, North Linden, Perham and Presque Isle. Several common carriers were heard in opposition to the granting of the additional authority. One of these, Cole's Express, as specifically found by the Commis-

sion, "is presently and has been for some time performing the transportation for which authority is here sought, apparently without dissatisfaction on the part of the shipper or the receivers." The Commission denied the petition and petitioner's exceptions raise the issues for determination here.

The exceptions are five in number. The first is a general blanket exception which need not be here considered, especially in view of the fact that the matters actually complained of by the petitioner are fully covered by his second, third and fourth exceptions. The fifth exception raises an issue now moot and has been expressly waived by petitioner.

The second exception asserts that petitioner is aggrieved by the findings and decrees of the Commission "in that the Statutes do not require a contract carrier to assume the burden of proof that the proposed service is a necessity and convenience as is required of a common carrier." The portion of the Commission's decree which is complained of reads as follows:

"Fifth: Finally, this Commission can authorize the proposed service only if it is justified by the evidence. We construe this to mean that the petitioner must assume the burden of proving that the proposed service is a necessity and convenience to at least a segment of the general public, the size of the segment depending upon the special circumstances in each case. To go a step further, when common carrier service is presently available it becomes imperative that the petitioner show why that service is insufficient. He has not done so in this case and in fact the common carrier authorized is presently and has been for some time performing the transportation for which authority is here sought, apparently without dissatisfaction on the part of the shipper or the receivers."

It is true, as petitioner contends, that the requirements imposed upon common carriers and contract carriers are not

identical. The common carrier must obtain from the Commission "a certificate declaring that public necessity and convenience require and permit such operation." R. S. 1954, Chap. 48, Sec. 20. The "public" there referred to is the general public as distinguished from any individual or groups of individuals. *Re: John M. Stanley,* 133 Me. 91; *Chapman, Re: Petition to Amend,* 151 Me. 68. On the other hand, the contract carrier must obtain, not the "certificate" applicable to common carriers, but a "permit" authorizing the operation and limiting its scope. The need for the particular service which may justify the contract carrier application may be only that of an individual or firm or a group of individuals or firms who comprise the potential contractors for the proposed service, as contrasted with the "necessity and convenience" of the general public. Nevertheless, as the law is written, the Commission may by no means ignore the interests of the public in motor carrier transportation in its determination as to whether or not the application of a contract carrier will be granted. R. S. 1954, Chap. 48, Sec. 23, Subsec. III, sets forth the requirements for contract carrier permits and may be paraphrased and summarized as follows:

1. The proposed operation must not be contrary to the declaration of policy set forth in Secs. 19 to 32 inclusive.

2. It must not impair the efficient public service of any authorized common carriers already serving the same territory over the same general routes.

3. It must not interfere with the use of the highways by the public.

4. Only such of the operations applied for shall be permitted as are *justified by the evidence.*

5. The applicant must be fit, willing and able properly to perform the service and to conform to the provisions of Secs. 19 to 32 inclu-

sive and to the applicable rules and regulations of the Commission.

We think the two references to Secs. 19 to 32 inclusive, most of which deal with common carriers rather than contract carriers, incorporating those sections by reference into Sec. 23, are most significant as indicating the policy considerations which must govern the Commission's determination in contract carrier cases. Without doubt the Legislature thereby intended to make certain that contract carrier permits would not be granted in cases where the requested operations would be adverse to the public interest and to the maintenance of a sound and effective motor and rail transportation system. We note with interest that in 1957 the Legislature amended Subsec. III by inserting the words "or otherwise will not be consistent with the public interest." P. L. 1957, Chap. 222. We do not think that this added any new requirement to be met by contract carrier applicants but was inserted by the Legislature to emphasize and point up this very important feature of an already effective policy. Sec. 23 already contained a paragraph stating:

"It is declared that the business of contract carriers * * * is affected with the public interest and that the safety and welfare of the public upon such highways, the preservation and maintenance of such highways and the proper regulation of common carriers using such highways require the regulation of contract carriers to the extent hereinafter provided:"

We are satisfied that the policy requirements of the Maine statutes fully accord with the statement and underlying reasons expressed by the writer of an article captioned Motor Carrier Certificates and Permits in Texas: Common Carrier Versus Contract Carrier, appearing in 20 Tex. L. Rev. 323. At page 349, it is stated: "No reason can be suggested for not requiring of the contract-carrier applicant satisfactory

proof that his proposed operations *will serve a real need.* Each additional burden on the highways is presumptively undesirable and is justified only by evidence that existing carriers are unable to render services which would be substantially the equivalent of that desired by the individual shipper or shippers for whom the applicant contracted to carry. But the statute should be drawn so as to leave no doubt that the proof required is not proof of *public* need or *public* convenience and necessity but simply proof that there is need for the services which the applicant proposes to render." (First emphasis supplied)

The finding of the Commission which is determinative here is in essence that the requested operation is not needed, even by an individual or a group of individuals. This finding is fully supported by the evidence. It is clearly not in the public interest and would be contrary to the over-all legislative policy to authorize contract carrier operations for which there is no demonstrable need. We do not construe the language above quoted from the Commission's decree as imposing upon the contract carrier the burden of proving that *"public* necessity and convenience" require and permit the operation. Rather has the Commission found, as upon this evidence it was compelled to find, that the suggested service was not needed or required by anyone, or as the Commission says, by "at least a segment of the general public." Without any evidence of need or of inadequacy or inefficiency of the common carrier service being furnished, the Commission could not have "justified by the evidence" the issuance of the requested permit.

Had there been some evidence of need for the contract carrier service, it would have been for the Commission to determine in the exercise of a sound discretion whether or not the satisfaction of that need would be consistent with the public interest and the public policy announced by the Legislature. *O'Donnell, Pet'r.,* 147 Me. 259, 264.

The Commission expressly found that issuance of the permit would not conflict with the declaration of policy set forth in Secs. 19 to 32 inclusive. With this conclusion we cannot agree for the reasons already stated. The petitioner, however, is not the one to complain if thereby the Commission erred in its reasoning. "Exceptions do not lie, however, to reasons given for a ruling, but only to the ruling itself. If the decision below is correct, it must be affirmed although the lower court relied upon a wrong ground or gave a wrong reason." *P.U.C.* v. *Congdon*, 137 Me. 216, 222.

We take this opportunity to comment upon *State of Maine* v. *Ballard,* 152 Me. 158, 161. The last paragraph of that opinion quotes the rule applicable in common carrier cases and tends to create the misapprehension that we were applying that rule in a contract carrier case. Ballard, upon its facts, merely holds as we do here that contract carrier permits are not to be issued when there is no evidence of need of the service and the operations of common carriers serving the same territory are entirely adequate and efficient. The quotation from a common carrier case was misleading and inappropriate.

For all of the foregoing reasons, the second exception must be overruled.

The third exception relates to a finding by the Commission alleged not to be supported by any evidence. The decree stated: "We also find no evidence that the present common carrier service is inefficient or inadequate." Upon a review of the record we find that the evidence fully supports the finding of the Commission. The suggestion that at some future time under changed conditions the services offered by common carriers might become inadequate will hardly suffice to compel a finding that they are presently inadequate. This exception is overruled.

The fourth exception rests upon the contention of the petitioner that there was no evidence that the common carrier, Cole's Express, had filed rates applicable to transportation between the points covered by petitioner's application. The petitioner argues that the common carrier was therefore not legally serving the territory here involved. We need only say that we find ample support in the evidence for the finding by the Commission and petitioner takes nothing by this exception.

The entry will be

*Exceptions overruled.*