APPLICATION OF LEO A. RICHER,
RE: CONTRACT CARRIER PERMIT

Kennebec.   Opinion, June 22, 1960.

*Scott W. Scully,* for Maine Central Railroad.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. (SIDDALL, J., did not sit.)

WILLIAMSON, C. J. This case is before us on exceptions by the Maine Central Railroad Company and the Boston and Maine Railroad to a decree of the Public Utilities Commission "That a permit be issued to Leo A. Richer authorizing operation of motor vehicles as a contract carrier transporting, — Cement in bulk and in bags from Thomaston to, — 1) North Berwick and Sanford for Girard Genest; 2) Sanford for Patrick Genest; 3) Biddeford for Henry Bourque; . . " R. S., c. 44, § 67.

The statutory provisions governing the case read:

"Sec. 23. 'Contract carrier' defined; regulations. - -
\* \* \* \* \* \* \* \* \*

"It is declared that the business of contract carriers, which term is intended to include all persons, firms or corporations operating or causing the operation of motor vehicles transporting freight or merchandise for hire upon the public highways, other than common carriers over regular routes, is affected with the public interest and that the safety and welfare of the public upon such highways, the preservation and maintenance of such highways and the proper regulation of common carriers using such highways require the

regulation of contract carriers to the extent hereinafter provided:

"**I.** No contract carrier shall operate, or cause to be operated, any motor vehicle or vehicles for the transportation of property for hire on any public highway within this state without having obtained a permit from the commission;

\* \* \* \* \* \* \* \* \*

"**III.** No application for a permit shall be granted by the commission until after a hearing, nor shall any permit be granted

(1) if the commission shall be of the opinion that the proposed operation of any such contract carrier will be contrary to the declaration of policy of section 19 to 33, or otherwise will not be consistent with the public interest, or

(2) will impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory by rail or over the same general highway route or routes or

(3) that an increase in the number of contract carriers operating in the area to be served by the applicant will interfere with the use of the highways by the public . . .

(4) Permits granted by the commission shall authorize only such operations covered by the application as the commission finds to be justified by the evidence, and

(5) no permit shall be granted unless it appears that the applicant is fit, willing and able properly to perform the service of a contract carrier by motor vehicle and to conform to the provisions of section 19 to 33, inclusive, and to the rules and regulations of the commission issued thereunder. . . . ." R. S., c. 48, § 23 (as amended in 1957.) (The numbers indicate the five findings required by statute and later referred to in the opinion).

"Sec. 19. Policy. — The business of operating motor trucks for hire on the highways of this state affects the interests of the public. The rapid increase in the number of trucks so operated, and the fact that they are not effectively regulated, have increased the dangers and hazards on public highways, and make more effective regulation necessary to the end that highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public; and that the various transportation agencies of the state may be adjusted and correlated so that public highways may serve the best interest of the general public." R. S., c. 48, § 19.

## EXCEPTION 1

The railroads contend they are "unable to determine the grounds of the . . . decree and whether or not the Commission has applied the statutory standards" from the failure of the Commission to make basic or essential findings, namely, the five findings stated in Section 23, *supra*, and a sixth, "that there was a contract or agreement expressed or implied for the use of the proposed services of the applicant."

The decree reads in part:

"We believe that the applicant has fulfilled the requirements of Section 23, Chapter 48 of the revised Statutes of Maine, 1954, as amended, and should be authorized to transport cement as hereinafter set forth in our order. . "

The railroads gain nothing from the failure to make the sixth stated finding. It is not required by Section 23. Fur-

ther, the railroads did not request such a finding and may not now complain of its absence from the decree.

This court has said:

> ". . . it is clearly the duty of the Commission under the statute, at least, if requested by any of the interested parties, to set forth in its orders and decrees the facts on which its order is based, otherwise the remedy provided by the statute for any erroneous rulings of law may be rendered futile." *Hamilton* v. *Caribou Water Light & Power Company,* 121 Me. 422, 425, 117 A. 582.

See also *Casco Castle Co., Petr.,* 141 Me. 222, 42 A. (2nd) 43; *CMPCO. Re Contract Rate,* 152 Me. 32, 122 A. (2nd) 541.

The remaining five items are the findings required by statute as the basis for granting a permit. The question raised by this exception is not whether the required findings are supported by evidence, but whether they have been made by the Commission and are sufficiently set forth in the decree.

We think it plain from the brief sentence quoted from the decree that the Commission made the required findings. To fulfill the requirements of the statute is to meet the statutory standards.

It is of importance when a permit is denied that the applicant know wherein he has failed to meet the statutory standards. See *State* v. *Ballard,* 152 Me. 158, 125 A. (2nd) 861; *Merrill* v. *P.U.C.,* 154 Me. 38, 141 A. (2nd) 434. In the instant case, however, it cannot be said that the railroads in bringing the case forward for review in the Law Court have been handicapped. It would serve no useful purpose to remand the cause for entry of a decree with more words but without increase in substance. The first exception is overruled.

## EXCEPTION 2

In the second exception the railroads object to the six findings by the Commission set forth in the first exception on the ground that there is no substantial evidence to support "the basic or essential findings upon which it must necessarily be based . . ."

There is no controversy over the applicable rule of law. "If a factual finding, basic of an order of the Commissioner, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final." *Gilman* v. *Telephone Company*, 129 Me. 243, 248, 151 A. 440; *Hamilton* v. *Power Co.*, *supra; State* v. *Ballard, supra.*

It is unnecessary that we consider findings (3), (5), and (6) in detail. We cannot say that under the applicable law the Commission erred in finding (3) that the proposed increase in contract carrier service would not "interfere with the use of the highways by the public."

Obviously the use of the highways would thereby be increased. The Commission was not required, however, as a matter of law to find interference by inference from the sole fact of the applicant's anticipated use of the highways. If such were the necessary result, we might well ask how any applicant for a permit as a contract carrier could meet the statutory standards.

Turning to finding (5) we are satisfied that the Commission could properly find the applicant was fit, willing and able to perform the services of a contract carrier and otherwise to conform to the statutes and regulations. There was substantial evidence that the applicant owned a truck and was prepared to operate a contract carrier service at rates approved by the Commission.

Finding (6) was not required by the statute, as we have seen in the first exception, and further, no request was made therefor by the railroads.

We are left then with three findings which the railroads assert are not supported by any substantial evidence; namely,

"1) That the proposed operation will not be contrary to the declaration of policy set forth in Sections 19 to 32, inclusive, or otherwise will not be inconsistent with the public interest;

"2) That the proposed operation will not impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory by rail or over the same highway route or routes;

\* \* \* \* \* \* \* \* \*

"4) That the operations authorized by the permit granted by the Commission were justified by the evidence."

The record discloses no dispute over the underlying facts. The controversy arises over the conclusions to be drawn therefrom. We summarize the facts as follows:

Mr. Richer seeks a permit as a contract carrier to haul cement over the highways from Thomaston, Maine, the place of manufacture. His application was supported by the three cement dealers named in the decree. Mr. Girard Genest receives cement by rail in both carload and less than carload lots at sidings about three-quarters of a mile from his plant at North Berwick and about two and one-half miles from his plant in Sanford. Mr. Henry Bourque receives cement by rail at a siding about a mile from his Biddeford plant. Mr. Patrick Genest at Sanford, who has limited storage facilities purchases cement locally in bags.

Mr. Girard Genest and Mr. Bourque, the Commission found, "receive carload lots in the busy summer season but

at other times carry a small inventory and truck delivery is more suited to their needs." Mr. Girard Genest expressed his view in these words, "It is a matter of convenience mostly because there isn't too much difference in the cost. . . . Convenience in handling smaller quantities."

In one instance there was a slightly lower cost per bag by truck than by rail. All dealers testified that the proposed service would be a convenience. The sum of the testimony was to the effect that the rail service was adequate but that the trucking service would be more convenient.

In *Merrill, supra,* in which exceptions to the denial of a contract carrier permit were overruled, we stated the rules here applicable:

> "It is clearly not in the public interest and would be contrary to the over-all legislative policy to authorize contract carrier operations for which there is no demonstrable need. . . Without any evidence of need or of inadequacy or inefficiency of the common carrier service being furnished, the Commission could not have 'justified by the evidence' the issuance of the requested permit.

> "Had there been some evidence of need for the contract carrier service, it would have been for the Commission to determine in the exercise of a sound discretion whether or not the satisfaction of that need would be consistent with the public interest and the public policy announced by the Legislature. O'Donnell, Pet'r., 147 Me. 259, 264."

> \* \* \* \* \* \* \* \* \* \*

> "Ballard, (supra) upon its facts, merely holds as we do here that contract carrier permits are not to be issued when there is no evidence of need of the service and the operations of common carriers serving the same territory are entirely adequate and efficient."

From our examination of the record we are unable to extract "some evidence (i.e. any substantial evidence) of

need for the contract carrier service" within the principles set forth in the *Merrill case, supra.* It would understandably be more convenient for the dealer to take delivery of cement at his plant than at the rail siding. Convenience alone, however, does not satisfy the test. There must be a need for the service rising above convenience of those whom it is proposed to serve, as here the dealers in cement, to warrant placing a contract carrier on the highway.

The Commission indeed has recognized the principle in the instant case in granting a permit for contract carrier service only to the dealers named and not generally "to points and places in York County," as requested by Mr. Richer. It is in the application of the principle to the facts, not in the principle, that we differ from the Commission.

The adequacy and efficiency of common carrier service is also a controlling factor in determining whether the applicant has met the policy established by the Legislature. In the instant case neither the adequacy nor efficiency of the rail service, apart from the lack of convenience in taking delivery at the rail sidings, is seriously questioned.

In our view of the record the evidence justified a finding of convenience, but not of need or lack of adequate and efficient rail service. In short, there was no substantial evidence to support the first and fourth findings.

Finding (2) touches upon the impairment of "the efficient public service" of the railroads. The volume of the traffic in cement from Thomaston, the point of origin, to points in York County, and specifically to points of delivery by rail to two of the dealers in North Berwick (Somersworth, N. H.), Sanford, and Biddeford is large. The greater portion of the haul is over the rails of the Maine Central Railroad, which has purchased and maintained special equipment for transportation of cement.

The only reasonable inference from the evidence on cement traffic moving by rail is that the proposed operation would cut the freight revenues in a substantial amount. Whether this loss would impair "the efficient public service" of the railroads presents a difficult and delicate question. Is the prospective loss of traffic in cement of significance when measured against the total business of the carriers? The Commission with its accumulated experience of years of regulation is especially fitted to answer this question. We cannot do so from the record. The prospective loss of freight, even of substantial volume, is not enough to compel a finding of impairment of public service.

In summary, finding (1) (policy) and finding (4) (justified by evidence) were not based on any substantial evidence of need of the proposed service by the three cement dealers or lack of adequate and efficient rail service. The second exception must therefore be sustained.

### EXCEPTION 3

Exception was taken to the following ruling of law:

> "Shippers should not be deprived of the use of a more efficient method of operation merely because the institution of such operation would result in possible loss of some traffic now handled by rail carriers."

The railroads contend the ruling is erroneous in law in light of the second required finding under Section 23 relating to the impairment of "the efficient public service" of the common carriers.

The statement as a statement of law is unobjectionable. The "possible loss of some traffic" cannot well be the basis for a finding of impairment of "efficient public service." See *Schaffer Transportation Co.* v. *U. S.*, 355 U. S. 83, 78 S. Ct. 173. No doubt every contract carrier in an area served by a common carrier deprives the latter of some traffic.

The further contention, as we understand the exception, that the Commission under this rule of law "failed to consider the effect of the loss of traffic and revenue on the service rendered by the common carriers" is not borne out by the record. We think it clear that in reaching the findings discussed in the second exception, and particularly finding (2), the Commission necessarily considered evidence of prospective loss of traffic in terms of impairment of public service. The objection of the railroads is to the finding, not to the rule as stated. The third exception is overruled.

### EXCEPTION 4

The railroads object to the following finding concerning the equipment and past operations of the applicant:

> "His (Mr. Richer's) equipment has been leased to Mr. Genest. The leasing arrangement has been investigated and declared legal by a State Trooper."

From our examination of the record, it appears that the finding with reference to the action of the state trooper was based solely on applicant's argument and not upon the evidence given by him or any other witness in the case. For this reason alone without in any way touching upon the materiality of the evidence, if otherwise admissible, the finding has no support in evidence. In any event, however, there was substantial evidence apart from that here in controversy on which the Commission could properly find as it did that the applicant had the ability to perform the proposed service. The railroads were not aggrieved by the ruling. The fourth exception is overruled.

The entry will be

> *Second exception sustained.*

> *Case remanded to the Public Utilities Commission for a decree upon the existing record in accordance with this opinion.*