**STATE of Maine**

v.

**MAINE STATE TROOPERS ASSOCIATION.**

Supreme Judicial Court of Maine.
Argued March 12, 1985.
Decided April 18, 1985.

Stephen Wessler, Asst. Atty. Gen., (orally), Augusta, for plaintiff.

Richardson, Tyler & Troubh, John W. Chapman (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Maine State Troopers Association (the "MSTA") appeals from a judgment of the Superior Court (Kennebec County) holding that the Solicitation by Law Enforcement Officers Law, 25 M.R.S.A. § 3701 *et seq.* (Supp.1984–1985), constitutionally prohibits the solicitation of advertisements from the general public on behalf of law enforcement officers or law enforcement associations. The State cross-appeals from that portion of the Superior Court's judgment deciding that the State may not properly ban the sale or distribution to the general public of MSTA publications, nor impose greater restrictions on the manner of distribution than are imposed on publications issued by state game wardens. We find no error and deny the appeals.

I.

The MSTA is an organization composed of current and retired members of the Maine State Police. In 1981, the MSTA published the first issue of a magazine intended to improve the image of troopers among MSTA members and the public. "The Maine Trooper" was published annually in 1981, 1982, and 1983. Approximately 750 copies of Volume 1, 2,000 copies of Volume 2, and 1,000 copies of Volume 3 were published. Advertisements were solicited and placed in the 1982 and 1983 volumes, no advertisements were solicited or bought for the 1981 volume. Most copies of the magazine were distributed free of charge. For example, each Maine State Trooper and retiree received a free copy, as did advertisers, the Governor, and state police forces around the country. Of the total 3,000 copies of "The Maine Trooper" published in 1982 and 1983, fewer than 300 were sold.

The MSTA sought advertisements by means of letters, telephone calls, and in-person solicitations. The 1983 volume contains advertisements from a number of businesses, including towing services, garages, and law enforcement equipment companies. Included among companies that were solicited but declined to advertise are: Scott Paper, Pratt & Whitney, and Kawasaki. The Attorney General has received no complaints concerning the sale of advertising in "The Maine Trooper."

In the fall of 1983, the State brought this action under the Unfair Trade Practices Act, 5 M.R.S.A. § 206 *et seq.* (1979 & Supp. 1984–1985), to enjoin permanently the MSTA from violating the Solicitation Law. The Solicitation Law prohibits any person from "solicit[ing] property from the general public when the property, or any part of it, in any way benefits, is intended to benefit or is represented to be for the benefit of any law enforcement officer, law enforcement agency or law enforcement associa-

tion ...." *See* 25 M.R.S.A. § 3702. The complaint alleged that the MSTA sold and offered to sell advertisements for "The Maine Trooper," and that revenues from the sales of advertisements benefited the MSTA. Based on these allegations, the State requested the Superior Court to find that the MSTA violated the Solicitation Law and the Unfair Trade Practices Act. The State also requested that the Superior Court permanently enjoin the MSTA and persons acting on its behalf from selling or offering to sell advertising to the general public for the benefit of the MSTA. In addition, the State requested that the MSTA be ordered to pay the costs of investigation.

The MSTA answered by denying a violation of section 3702 and by alleging that section 3702 is unconstitutional on its face and as applied. The MSTA sought to enjoin enforcement of section 3702 and sought reasonable attorney's fees pursuant to 42 U.S.C. § 1988. The parties submitted the matter to the Superior Court on agreed upon testimony and joint exhibits. The Superior Court ruled that the restrictions on solicitation of advertising imposed by the Solicitation Law "are valid and enforceable against" the MSTA, "subject to the limited exceptions for solicitation of advertising allowed by the 'wardens' exception ...." The Superior Court ruled that the MSTA "may sell their publications to the general public subject to the same limits as are imposed on associations of State Wardens by 25 M.R.S.A. section 3702." In the view of the presiding justice, issuance of an injunction against either party was unnecessary because of the parties' commitment to uphold the law.

## II.

The MSTA's first argument is that it has not solicited property from the general public. Section 3702 provides in part that:

> No person may solicit property from the general public when the property, or any part of it, in any way benefits, is intended to benefit or is represented to be for the benefit of any ... law enforcement association.

The MSTA admits that it is a law enforcement association as defined in 25 M.R.S.A. § 3701(2), and that it has solicited property within the meaning of the Solicitation Law, by selling or offering to sell advertising. *See* 25 M.R.S.A. § 3701(5). There is no dispute that the MSTA undertook its solicitations for its own benefit. The MSTA, however, denies that it has solicited property from the general public, as required for a violation of section 3702. The Solicitation Law does not expressly define the phrase, "general public."

The MSTA contends that because it solicited mostly from businesses with which it or individual troopers had a personal relationship, the general public was not solicited. The MSTA, relying on two Law Court decisions, defines "public" as meaning every individual of the State as opposed to any single individual or group of individuals. *See, e.g., Merrill v. Maine Public Utilities Commission,* 154 Me. 38, 41, 141 A.2d 434, 435 (1958) (defining "public" for purposes of common carrier statute as referring to general public as distinguished from any individual or group of individuals); *Knight v. Thomas,* 93 Me. 494, 500, 45 A. 499, 501 (1900) ("public" defined as entire community, both taxpayers and nontaxpayers).

As used in section 3702, the phrase "general public" includes any member of the public other than members of the MSTA and their immediate families. The Solicitation Law, therefore, is applicable even though solicitation activities are limited to some individual member or identifiable group within the general public. Thus, the MSTA takes nothing by its contention that most of the solicitations were aimed at persons and businesses with whom the troopers already had a relationship. We conclude from the record that the Superior Court correctly found that the MSTA has solicited property from the "general public" as that phrase is used in section 3702.

The MSTA's second argument is that the Solicitation Law violates provisions of the Maine Constitution and the United States Constitution. At the core of the MSTA argument is the contention that section 3702 impermissibly infringes upon the MSTA's constitutionally protected right of free expression. *See* U.S. Const., amend. I, amend. XIV; Me. Const., art. I, § 4, art. I, § 15.

 The MSTA accurately contends that solicitation activities are entitled to the protections of the freedom of speech provisions of the Maine Constitution and United States Constitution. *See Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. ——, ——, 104 S.Ct. 2839, 2849, 81 L.Ed.2d 786 (1984); *Village of Schaumburg v. Citizens for Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833–834, 63 L.Ed.2d 73 (1980). Of course, the freedom of speech is not absolute. The ultimate protection to be afforded the MSTA's solicitation activities depends in large measure upon the importance of the State's interest in regulating those activities.

As reported in the Solicitation Law's Statement of Fact, L.D. 664 (108th Legis. 1977), the Legislature's avowed purpose was "to prevent police officers and their agents from soliciting contributions from the general public for the benefit of a law enforcement agency or a benevolent association. Solicitation by a law enforcement agency is inherently coercive." Implicit in the recognition that law enforcement solicitation is inherently coercive, is the understanding that law enforcement solicitation erodes public confidence in the integrity of law enforcement personnel. The State's interest in protecting the reputation of its law enforcement bodies is undeniably substantial. Indeed, we would be hard pressed to suggest a weightier interest.

 Because the Solicitation Law's prohibitions place a burden on the MSTA's fundamental rights, the State must show that the law can withstand strict scrutiny. *See Dunn v. Blumenstein*, 405 U.S. 330,

336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). For a law to survive strict scrutiny, the State must demonstrate that the law is necessary to promote a compelling government interest. *See Association of Independent Professionals v. Maine Labor Relations Board*, 465 A.2d 401, 410 (Me.1983); *Lambert v. Wentworth*, 423 A.2d 527, 532 (Me.1980). The law must be narrowly drawn so that it is the least restrictive means of achieving the compelling government interest. *See Village of Schaumburg*, 444 U.S. at 636, 100 S.Ct. at 836; *Association of Independent Professionals*, 465 A.2d at 411.

 The Superior Court found that there was no subjective intention on the part of the troopers to ask anyone to purchase advertising if they did not wish to do so. The MSTA reasons that because the act prohibits solicitation, even if the solicitation does not involve a subjective intent to coerce, then it is clear that the act is not the least restrictive means of achieving the governmental interest. The MSTA errs in confining the governmental interest solely to the prohibition of solicitations involving a subjective intent to coerce. The act itself and the legislative history reveal two additional aspects of law enforcement solicitation that justify the breadth of the regulation. Although a police officer may not overtly attempt to coerce a prospective donor, the mere act of solicitation is inherently coercive. Because of the officer's position, the donor may not feel totally free to reject the request. Beyond any impact on the prospective donor, the appearance of the transaction to third persons, serves to undermine public confidence in the integrity of the public office. Accordingly, the subjective intent of the troopers and the absence of any complaint of coercion are irrelevant. The damage that the Legislature seeks to avoid is no less real merely because it is intangible. Because at least the appearance of coercion inheres in every solicitation on behalf of law enforcement

agents, and because that appearance undermines the integrity of the office, the State has a compelling interest in regulating all law enforcement solicitation.

█ The MSTA's third argument is that the Solicitation Law is void because it prohibits protected, as well as unprotected conduct. The MSTA contends that the Solicitation Law is "overbroad" because it prohibits every solicitation of a member of the public. We do not consider this to be an appropriate case for application of the overbreadth doctrine. The Supreme Court has said that legislation is overbroad "if in its reach it prohibits constitutionally protected conduct." *See Grayned v. Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). In *New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982), the Supreme Court explained that the "traditional rule is that a person to whom the statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." The Supreme Court identified the first amendment overbreadth doctrine as one of the few exceptions to the traditional rule. *See id.* at 768–769, 102 S.Ct. at 3361. The First Amendment overbreadth doctrine permits "persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." (citations omitted). *See id.* The Court, however, has applied the doctrine " 'only as a last resort' " and therefore the overbreadth must be " 'substantial' " before a statute will be declared facially invalid. *See id.* Because the integrity of the State's law enforcement agents is cast in doubt with every solicitation on their behalf, the prohibition against soliciting the "general public" is not fatally overbroad.[1]

█ The MSTA's fourth argument is that the Solicitation Law is void for vagueness because it fails "[t]o provide reasonable and intelligible standards to guide the future conduct of individuals and to allow the court and enforcement officials to effectuate the legislative intent in applying these laws." *See Maine Real Estate Commission v. Kelby,* 360 A.2d 528, 531 (Me. 1976). The MSTA asserts that it has no way of knowing "what smaller category of persons may permissibly be solicited." Given the appearance of coercion and the potential effect on the public office involved in every solicitation for law enforcement personnel, permissible targets of MSTA solicitation are confined to its own membership and immediate family members.

█ Finally, the MSTA contends that the Solicitation Law is a significant deprivation of its right to use property, amounting to a taking of property without due process of law. The MSTA's contention is premised on the alleged indefiniteness of the phrase "general public." As explained above, however, the phrase is not indefinite. The MSTA's right to use its property has been adequately protected by the Legislature's adherence to due process.

### III.

Turning to the "wardens exception", in 1983, the Legislature amended section 3702 by adding the following to the prohibition on solicitation of property from the general public for the benefit of a law enforcement officer, agency, or association:

> except that any state warden service association may offer for sale, by persons other than wardens or members of the association, to members and the public guide books or handbooks containing historical reviews or descriptions of services, except that on the request of a nonmember the association may provide that person with the copies requested for sale by that person.

---

1. We decline to speculate on possible application of the statute to hypothetical transactions other than the sale of advertising and the sale of the magazine.

*See* P.L.1983, c. 330. The amendment further provides that no advertisements can be sold or included in the publications, except complimentary statements from members or former members. In addition, the amendment directs that all proceeds from sales be expended "for direct charitable services to members [or their families] ... and may not be used for buildings or equipment" or entertainment of members.

When the State permits one speaker to exercise a right to speak, the State cannot deny another speaker similar rights without substantial justification for differentiating between the speakers. *See Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972); U.S. Const., amend. XIV; Me. Const., art. I, § 6–A. The Superior Court found no justification for treating the MSTA and game wardens differently in the context of solicitations. The State suggests that we eliminate the discrepancy by striking the "wardens exception" from the statute. The less restrictive treatment provided under the "wardens exception" is not rendered invalid because of the more restrictive provisions that apply to members of the MSTA. When a statute treats essentially identical speakers differently, it is the more restrictive treatment that must fall.

The record is devoid of a substantial justification for the statute's differing treatment of the MSTA and game wardens. In the absence of a demonstration of a substantial justification for this discrepancy, we conclude that the Solicitation Law, as presently drafted, may not be applied to the MSTA more restrictively than it is applied to game wardens.

## IV.

Finally, the MSTA requested that attorney's fees be awarded to it pursuant to 42 U.S.C. § 1988. The Superior Court denied the request. Section 1988 allows a court, in its discretion, to award reasonable attorney's fees as part of the award of costs to a party prevailing in an action to enforce 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986. The MSTA set forth the claims of unconstitutionality as an affirmative defense to the State's complaint. In addition, the MSTA filed a counterclaim asserting claims of unconstitutionality identical to those set forth as affirmative defenses. The MSTA's affirmative defense was sufficient to protect their civil rights. The counterclaim added nothing, therefore we disregard it and view the MSTA as a defendant for purposes of this litigation. In *Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983), the Supreme Court stated that a prevailing defendant "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarass the defendant." The record contains no substantial evidence that the State instituted suit for purposes of harassment or vexation.

The entry is:

Judgment affirmed.

All concurring.