**AUBURN POLICE UNION,
et al., Plaintiffs,**

v.

**Michael E. CARPENTER, as Attorney
General of the State of Maine,
Defendant.**

**Civ. No. 91–292–P–H.**

United States District Court,
D. Maine.

July 13, 1992.

**822**

Leland N. Chisolm, Kelly, Remmel & Zimmerman, Portland, Me., Errol Copilevitz, John P. Jennings, Jr., Copilevitz, Bryant, Gray & Jennings, Kansas City, Mo., for plaintiffs.

Stephen L. Wessler, Asst. Atty. Gen., Augusta, Me., for defendant.

## MEMORANDUM OF DECISION

HORNBY, District Judge.

This case addresses the constitutionality, under the First and Fourteenth Amendments, of a Maine statute prohibiting fundraising that tangibly benefits law enforcement activities.[1] The statute can be enforced by injunctive relief and civil penalties. I conclude that the injunctive relief amounts to an unconstitutional prior restraint but that otherwise the statute is constitutional. Consequently, I accept in part and reject in part the decision of the United States Magistrate Judge.[2]

### I. Procedural Background

In 1977, the Maine Legislature prohibited law enforcement personnel from general public fundraising. 25 M.R.S.A. § 3702. The law was amended in 1983 to exempt game wardens in limited circumstances.

*Id.* In 1985, the Maine Supreme Judicial Court, sitting as the Law Court, upheld the constitutionality of the statute. *See State v. Maine State Troopers Ass'n*, 491 A.2d 538 (Me.1985), *appeal dismissed*, 474 U.S. 802, 106 S.Ct. 34, 88 L.Ed.2d 28 (1985). The Law Court found that the State had a compelling interest in avoiding police coercion and that such coercion was inherent any time a law enforcement officer asked a business or other person for money. *Id.* at 542-43. The Law Court also found that the statute was narrowly drawn to accomplish this compelling interest. *Id.* The Law Court did, however, invalidate the statutory exception for game wardens. *Id.* at 544. The United States Supreme Court summarily dismissed the appeal. 474 U.S. 802, 106 S.Ct. 34, 88 L.Ed.2d 28.

In 1989, the Maine Legislature again amended the statute, this time exempting certain activities of the Attorney General, 25 M.R.S.A. § 3706 (repealed), and permitting public fundraising for a memorial to law enforcement personnel killed in the line of duty. P. & S.L. 1989 ch. 47. In a later lawsuit, this Court found the amended statute unconstitutional because, in creating the exceptions, the Legislature had demonstrated that it no longer viewed the avoidance of police coercion as a compelling interest. *Auburn Police Union v. Tierney*, 756 F.Supp. 610 (D.Me.1991).

In light of that holding the Legislature repealed the exceptions and redrafted the statute to provide that fundraising from the general public is illegal if the money will "tangibly benefit" law enforcement. 25 M.R.S.A. § 3702–A. The legislative history makes clear, and regulations confirm, that the new language prohibits most police fundraising, but permits police personnel to raise money for charities unrelated

---

**1.** The statute provides:

A person may not solicit property from the general public when the property or any part of that property in any way tangibly benefits, is intended to tangibly benefit or is represented to be for the tangible benefit of any law enforcement officer, law enforcement agency or law enforcement association. Any violation of this chapter constitutes a violation of the Maine Unfair Trade Practices Act.

25 M.R.S.A. § 3702–A. Although the statute prohibits solicitation of any kind of property, I will speak generally of fundraising. According to the parties' stipulation, the solicitation of paid advertising in law enforcement publications is a primary method of fundraising.

**2.** The parties have stipulated to the facts and all that remain are legal questions. My review is therefore *de novo*.

to law enforcement.[3] In addition, the statute preserves an exemption permitting law enforcement personnel to raise money for purposes of campaigning for public office. 25 M.R.S.A. § 3703.[4] The office of sheriff, for example, is an elected office under both the Maine Constitution and Maine statute. Me. Const. art. IX, § 10; 30 M.R.S.A. § 901.

In this new declaratory judgment action, various organizations representing police interests, as well as individuals and organizations that raise money on behalf of police activities, have challenged the constitutionality of the statute under the United States Constitution. The underlying facts are stipulated.

## II. First Amendment Challenges

### A. Standard of Review

■ This case involves the solicitation of money. Both sides agree that commercial speech (as the United States Supreme Court has used that term) is not involved here. Instead, this solicitation of money is to be treated as a traditional speech activity that receives full First Amendment protection. *See International Society for Krishna Consciousness, Inc. v. Lee*, —— U.S. ——, 112 S.Ct. 2711, —— L.Ed.2d —— (1992) (solicitations by Society for Krishna Consciousness at airports); *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (solicitations by professional fundraisers for various causes and charitable organizations); *Secretary of State of Md. v. J.H. Munson Co. Inc.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (professional fundraiser whose customers included various chapters of the Fraternal Order of Police); *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (solicitation on behalf of nonprofit environmental protection organization).

■ Although the State Attorney General's Office has resisted the conclusion, the restriction imposed on free speech here is clearly content-based. Law enforcement personnel may go door-to-door to homes and businesses and talk on a variety of subjects. They can even raise money for various kinds of charitable undertakings. But they run afoul of the law if their conversation turns to money for bulletproof vests or for the local police union. The conclusion is thus unavoidable that the content of the speech determines what is permitted and what is prohibited. Such content-based restrictions on speech amount to the censorship of ideas in its classic form and must therefore receive "exacting scrutiny" under the First Amendment. For the statute here to survive attack, it must further a compelling state interest and its measures must be narrowly drawn to accomplish that end. *Burson v. Freeman*, —— U.S. ——, ——, 112 S.Ct. 1846, 1849, 119 L.Ed.2d 5 (1992).

### B. Prior Restraint

This statute is enforced through the Maine Unfair Trade Practices Act. As a result, the Attorney General may seek both injunctive relief and civil penalties. 5 M.R.S.A. § 209.

■ Injunctive relief prohibiting speech before it is even uttered unquestionably amounts to a "prior" or "previous" restraint. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Melvile B. Nimmer, *Nimmer On Freedom of Speech* § 4.03 (1991).

---

**3.** The Department of the Attorney General's regulations describe the class of permitted solicitations as follows:

> A solicitation of money for purposes completely unrelated to law enforcement, such as for a charity unrelated to law enforcement, does not confer a tangible benefit on law enforcement even if the solicitation effort increases good will toward law enforcement. For example, if police officers engage in solicitations of money for earthquake victims in South America, and if no law enforcement

agency, officer, or association receives, is intended to receive, or is represented to receive any of the proceeds of the solicitation, then that solicitation program will *not* tangibly benefit law enforcement.

Me. Dep't of Att'y Gen. ch. 109.2: Rules Concerning Unfair Trade Practices and Charitable Solicitations By Law Enforcement Officers.

**4.** Although this exception is not new, the earlier lawsuits did not address it.

The United States Supreme Court has said over and over again that there is a very heavy presumption against the constitutional validity of prior restraints. *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) ("[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity"), *citing Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Indeed, the First Circuit has observed that in two centuries of our history the United States Supreme Court has *never* sustained a prior restraint on pure speech. *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir.1986). The United States Supreme Court has not applied the prior restraint doctrine only to restraints on the press, but has also extended it to freedom of speech generally. *See, e.g., Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (invalidating an ordinance that prohibited use of loudspeakers without the permission of the City's Chief of Police because "it establishe[d] a previous restraint on the right of free speech"); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (invalidating a New York City ordinance forbidding public worship meetings on the streets without a permit because the ordinance was a prior restraint).[5]

■ To be sure, there are limited exceptions to the prior restraint doctrine. Reasonable time, manner and place restrictions for use of a public forum are permitted. *United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); *see generally* Nimmer at § 4.06[B]. A prior restraint against fraudulent commercial speech may be constitutionally permissible, *see Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 189–91, 68 S.Ct. 591, 597–98, 92 L.Ed. 628 (1948); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–72 n. 24, 96 S.Ct. 1817, 1830–31 n. 24, 48 L.Ed.2d 346 (1976), as well as restraints against copyright infringement and antitrust violations. But these exceptions do not apply here. No permit is available for these solicitation activities under any circumstances. Since this case involves noncommercial speech, the fraudulent commercial speech exception is inapplicable. Moreover, none of the copyright or antitrust arguments apply.

■ Finally, given the cases in which the United States Supreme Court has prohibited prior restraints, such as the Pentagon Papers case where the *national security itself* was said to be at stake, *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822, there is no basis for enlarging these limited exceptions to the prior restraint doctrine and finding that the state interest here—avoiding the inherent coercion in police fundraising—justifies an injunction rather than the penalties that can be imposed if illegal fundraising occurs.[6] Enforcement of the statute by injunctive relief is therefore unconstitutional.[7]

---

**5.** The Attorney General's Office suggested at oral argument that the prior restraint doctrine should be limited to cases involving a "publication." Although the doctrine apparently originally derived from concern over censorship that occurred under early licensing systems of printing presses and, therefore, could conceivably have been limited to First Amendment freedom of the press, the Supreme Court cases have recognized no such limitation.

It is true that commentators have criticized prior restraint doctrine, and suggested that it lacks coherence or has outlived its usefulness. *See, e.g.,* John Calvin Jeffries, Jr. *Rethinking Prior Restraint*, 92 Yale L.J. 409 (1983). If the doctrine is to be changed, however, it must be by the United States Supreme Court, not a trial court.

**6.** Without these precedents, the argument might be made that a prior restraint is necessary here because once the solicitation is successful, the damage is done, the "taint" on law enforcement has occurred, and no later civil penalty can undo it.

**7.** The version of the statute upheld by the Law Court in *State v. Maine State Troopers Ass'n*, 491 A.2d 538 (Me.1985), *appeal dismissed,* 474 U.S. 802, 106 S.Ct. 34, 88 L.Ed.2d 28 (1985), also provided for injunctive relief. But examination of the Superior Court's ruling in that case (declining to issue injunctive relief), as well as the Law Court's decision, and the briefs filed in the appeal to the United States Supreme Court, reveals that "prior restraint" was never argued. Consequently, these courts cannot be considered to have ruled on the issue.

■ At oral argument the State Attorney General's Office stated that injunctive relief is the primary enforcement device for the statute and that if injunctive relief is eliminated the statute is essentially gutted. Since that was a statement made under the pressures of oral argument, it may not represent the State's considered position on the legislation. I will therefore proceed to address the constitutionality of the statute if it is enforced without injunctive relief.[8]

## C. Constitutionality of the Statute Without Prior Restraint

By summarily dismissing the appeal from the Law Court's decision in *Maine State Troopers Ass'n*, the United States Supreme Court has recognized that avoiding the coercion inherent in police fundraising can be a compelling state interest if the State chooses to recognize it as such. *State v. Maine State Troopers Ass'n*, 491 A.2d at 542–43, *appeal dismissed*, 474 U.S. 802, 106 S.Ct. 34, 88 L.Ed.2d 28. I am bound by that decision. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). The *Maine State Troopers Ass'n* decision also recognized that the statute as then presented and argued to the Law Court and the United States Supreme Court was narrowly drawn to implement the compelling interest. *State v. Maine State Troopers Ass'n*, 491 A.2d at 543. The statute has undergone a number of changes since the Law Court and United States Supreme Court decisions, however, and I must accordingly analyze whether the statute as *currently* enacted reflects state recognition of a compelling interest and whether it is sufficiently narrowly drawn to satisfy First Amendment concerns.

In part, this analysis involves so-called First Amendment overbreadth issues. That is, even if the statute is constitutional as applied to these particular plaintiffs and their proposed activities, does it unconstitu-

tionally prevent other speech? The United States Supreme Court has made clear that a statute should be struck down on this ground only if its overbreadth is "substantial." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). In fact, a statute will be *sustained* against First Amendment attack where "despite some possibly impermissible application, the 'remainder of the statute … covers a whole range of easily identifiable and constitutionally proscribable … conduct.'" *Secretary of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 964–65, 104 S.Ct. 2839, 2851, 81 L.Ed.2d 786 (citations omitted).

■ In this connection, the plaintiffs suggest that the statute prohibits an unattended collection box in a public place seeking money for causes that would tangibly benefit police officers. They argue that there is no coercion possible or likely in that circumstance and that the statute is therefore unconstitutionally overbroad. I disagree. As the Law Court recognized from the beginning, appearance is as much a part of the problem as reality in avoiding police coercion. Even though no police personnel attend such a collection box, citizens and business people might well feel it necessary to be seen publicly depositing a contribution. Thus, prohibiting the unattended collection box would not be an unconstitutional application of the statute. This same reasoning—the pressure to acquire a public reputation of having financially supported the police—explains why the Legislature can also prohibit a civilian from raising money for police activities or prohibit an advertising company from soliciting advertisements for police publications.

■ In his recommended decision, the Magistrate Judge suggests that the statute prohibits the sale of police publications such as the "Maine State Trooper" at an ordinary magazine stand along with the

---

**8.** Without the injunctive relief provision, there is no prior restraint. Contrary to the plaintiffs' Complaint, the fact that imposing civil penalties on law enforcement fundraising may thereby affect later speech (i.e., without fundraising the law enforcement agencies will not have the re-

sources to make their views known later) does not ipso facto make such civil penalties a prior restraint. Since any restraint on speech may have consequences for later speech, every regulation of speech would be a prior restraint under that analysis.

scores of other commercial magazines that might be placed for sale there. Although the Attorney General's Office agreed at oral argument that the statute prohibits such sales, I have serious doubt whether the statutory language permits such an interpretation[9] or, for that matter, whether the Attorney General's office would incur the expense of enforcing the statute in such areas. I decline to find that this unlikely application of the statute is a substantial overbreadth.

These are the only examples that have been proposed in support of the plaintiffs' argument that the statute is substantially overbroad.[10] Even assuming that these examples are impermissible applications of the statute, they are insubstantial, and *Broadrick* teaches that the "overbreadth of a statute must not only be real, but substantial as well, judged in relation to [its] plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. at 615, 93 S.Ct. at 2918. Here, for the reasons set forth by the Maine Law Court in *Maine State Troopers Ass'n,* the bulk of the solicitation law "covers a whole range of easily identifiable and constitutionally proscribable ... conduct." *Secretary of State of Md. v. J.H. Munson Co.,* 467 U.S. at 964–65, 104 S.Ct. at 2851. Accordingly, I must sustain it against the First Amendment overbreadth attack.[11]

The plaintiffs' other First Amendment arguments challenge whether the state's interest (avoiding the coercion it asserts lies inherently in police fundraising) is truly compelling.[12] They point out that the statute does not apply to fundraising by other state or local employees such as fire prevention personnel. The plaintiffs argue that citizens may feel equally coerced to contribute to fundraising requests by these other public servants. In addition, the statute permits police fundraising for activities that do not tangibly benefit the police. This category would include fundraising for unrelated charities such as the Special Olympics. The plaintiffs contend that all the concerns about inherent coercion are equally present in that kind of fundraising. Finally, the statute permits fundraising by law enforcement personnel who are campaigning to be elected as sheriff or to some other public office. Here, too, the plaintiffs maintain that any concerns about coercion are equally applicable. All these factors, the plaintiffs argue, show that the State does not really have a compelling interest in avoiding "inherent coercion." Instead, its willingness to tolerate "coercion" in these kinds of cases reflects that the avoidance of coercion is not such an important interest after all.

9. It is more reasonable to interpret the language that says a person "may not solicit property" to mean only requests for donations and not to include ordinary commercial transactions. I cannot believe the Legislature intended to prohibit such transactions as the sale of used police vehicles or furniture; police auctions of unclaimed property; or the sale of police publications at a newsstand where the law enforcement agency does not seek a donation but rather the fair exchange of consideration. This interpretation is reinforced by the legislative debate, which focused upon donative transactions. It is also supported by the Attorney General's Office regulations, which read: "[The statute] prohibits solicitation of *donations* that provide a tangible benefit to any law enforcement officer...." Me. Dep't of Att'y Gen. ch. 109 (emphasis supplied). This lawsuit involves in part the solicitation of paid advertising in law enforcement periodicals. Although there may be a limited exchange of consideration in some of these transactions (law enforcement officers are a market for some businesses), such solicitation generally has a donative element as well, and the parties have treated it as such.

10. They also assert that the statute is overbroad if it prohibits law enforcement personnel from soliciting other law enforcement personnel. But the Attorney General's Office agrees that the statute does not prohibit such solicitation.

11. Under the circumstances, if any overbreadth does exist in the statute, it can be cured on a case-by-case basis. *See Broadrick v. Oklahoma,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2817–18 (1973).

12. Some of these issues were implicit in the earlier version of the statute but were not raised before either the Law Court or the United States Supreme Court. *Stare decisis,* therefore, appears not to bar their being raised now. Moreover, *res judicata* does not bar the claim of all the plaintiffs here. I will, therefore, proceed to address these issues.

There are several problems with these arguments. First, the questions whether there is as much coercion in fundraising by fire and other civic personnel as in fundraising by police personnel and whether there is as much coercion in police fundraising for unrelated activities as for police-related activities are open to debate. They are clearly matters on which reasonable minds may differ. Although the issues could perhaps be resolved through an empirical survey with statistical data and analyses, no such evidence is presented here. And I certainly cannot take judicial notice that all such fundraising is equally coercive. It is true that a court's role is to make an independent First Amendment analysis of a statute, determining whether a state interest can be treated as compelling and whether a statute is sufficiently narrowly drawn. *John Donnelly & Sons v. Campell,* 639 F.2d 6, 8 (1st Cir.1980) *aff'd* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). But the underlying factual premises, at least when the matter is open to doubt, must be left to the Legislature. *Cf. International Society for Krishna Consciousness, Inc. v. Lee,* —— U.S. at ——, 112 S.Ct. at 2722 (Kennedy, J., concurring). I therefore accept the legislative premise that these types of fundraising are different. (And if the Legislature has misjudged in believing that the other types of solicitation are less coercive, that misjudgment surely should not destroy the validity of the prohibition on police solicitation that clearly is coercive, specifically the instances where the statute has already been upheld by the Law Court and the United States Supreme Court.)

Second, the Law Court's and the United States Supreme Court's recognition in *Maine State Troopers' Ass'n* that avoiding the coercion inherent in police fundraising can be a compelling state interest means that the State must be able to seek to avoid it where it can. It need not prohibit it in every conceivable instance in order to have a constitutional statute. In the Hatch Act cases, for example, the Unit-ed States Supreme Court has clearly recognized that government can forbid partisan political activity by civil servants even though it does not extend the prohibition to other types of political activity. *See, e.g., United States Civil Service Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973); *United Public Workers v. Mitchell,* 330 U.S. 75, 100, 67 S.Ct. 556, 569, 91 L.Ed. 754 (1947). When a legislature undertakes to address social problems, courts are not to fault it for failing to address every instance immediately. *See, e.g., Broadrick v. Oklahoma,* 413 U.S. at 607 n. 5, 93 S.Ct. at 2913 n. 5.

Finally, what the State is regulating here is First Amendment activity. Thus, there is a countervailing interest on the part of those who seek to engage in speech. The Legislature should, therefore, be permitted to attempt to draw its prohibition as narrowly as possible and not encompass within the prohibition more than it believes necessary. If there is doubt whether fire or other civic personnel fundraising or fundraising for nonpolice charities is highly coercive, the Legislature should be able to recognize the First Amendment interest and permit such speech activities without thereby invalidating its prohibition on those forms of police fundraising that it is sure are coercive.

In the specific case of elections, a prohibition on campaign fundraising by law enforcement personnel would effectively disqualify them from an office such as sheriff for, unless they were independently wealthy, they could easily be outspent by opponents who were not in law enforcement. I am not prepared to say that the State of Maine may not choose its sheriffs by election or that, having decided to do so, it must make it well-nigh impossible for a law enforcement officer to win the office. This interest in the electoral process is itself a First Amendment interest.[13] To the extent that law enforcement officers

---

**13.** In *Burson,* the Supreme Court said that speech engaged in during a political campaign is the most important interest the First Amend-ment can protect. *Burson v. Freeman,* —— U.S. at ——, 112 S.Ct. at 1849.

can run for other public offices,[14] restrictions on fundraising are imposed—no fundraising in uniform or with a badge, 25 M.R.S.A. § 3711 (also applicable to sheriff's elections); no fundraising for one's own campaign for a nonpartisan office, 25 M.R.S.A. § 3712; no use of coercion in fundraising, 25 M.R.S.A. § 3713(2). *See also* 30–A M.R.S.A. § 355(3) (specific limitations on sheriffs and deputies). Unfortunately, the parties have not addressed the scope of law enforcement personnel's ability to run for public office under Maine statutes, and to solicit money in that connection; my citations therefore may be incomplete. But the First Amendment interest in speech during political campaigns is certainly a more than adequate basis for the State's exception of these campaigns from the law enforcement fundraising prohibition, especially given the restrictions I have noted.

■ The First Amendment does not command perfection. In a statute affecting speech, *some* degree of over-inclusiveness or under-inclusiveness is generally unavoidable. Where a compelling state interest is at stake, the First Amendment requires simply that the restriction be drawn as narrowly as possible without jeopardizing the State's ability to achieve its desired end. I find no reason to deviate from the conclusion reached by the Maine Law Court and the United States Supreme Court that Maine has a compelling interest in avoiding the coercion it finds inherent in police fundraising. I also conclude that the statute as amended is narrowly drawn to accomplish that compelling interest and that it is not substantially overbroad. To require the State to draw its restrictions more narrowly would cripple its ability to prevent police coercion. And it would make little sense to void the statute for failing to impose the restriction more broadly than it has, given the other First Amendment interests at stake.

### III. Equal Protection Challenge

■ The plaintiffs' final challenge to the statute is that it discriminates among speakers and different kinds of speech in violation of the Equal Protection clause of the Fourteenth Amendment. The same analysis—is there a compelling state interest and is the statute narrowly drawn to achieve the goal?—applies when the statute is measured against the equal protection clause. *See, e.g., Carey v. Brown,* 447 U.S. 455 (1980); *Police Dep't of the City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). For the same reasons that I have found that the statute meets the First Amendment challenge, I find that it also meets the Fourteenth Amendment challenge.

### IV. Relief

■ Declaratory judgment shall therefore be entered that the statute is unconstitutional insofar as it is to be enforced by injunctive relief, but that shorn of the injunctive remedy the statute is constitutional. The lawyers shall meet and confer, and inform the Court by August 10, 1992, whether any injunctive relief is necessary and, if so, propose the form of injunction.

Since the plaintiffs have succeeded on a significant issue in this case and have achieved "some of the benefit [they] sought in bringing [the] suit," I find that they are a prevailing party within the meaning of 42 U.S.C. § 1988 and *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989), and are therefore entitled to an award of attorney fees. The plaintiffs shall prepare a proposed award of attorney fees reflecting their work on the issue on which they prevailed and present it to the defendants' lawyers for review within ten (10) days. The proposed award shall be filed with the Court by August 10, 1992. If the lawyers are unable to agree, they shall file by that date respective statements concerning the reasons why they cannot agree. No costs are awarded.

IT IS SO ORDERED.

---

**14.** There are substantial restrictions. *See, e.g.,*  30–A M.R.S.A. § 355(2).