**TELCO COMMUNICATIONS, INC., Plaintiff,**

v.

**James J. BARRY, Jr., as he is the Director of the Division of Consumer Affairs in and for the State of New Jersey, and Peter N. Perretti, Jr., as he is Attorney General of the State of New Jersey, Defendants.**

**Civ. A. No. 89–3393 (XX).**

United States District Court,
D. New Jersey.

March 5, 1990.

---

Carpenter, Bennett & Morrissey by John Shea, Newark, N.J., Peter S. Brooks, Boston, Mass., for plaintiff.

Peter N. Perretti, Jr., Atty. Gen. of New Jersey by Jack M. Sabatino, Asst. Atty. Gen., Roberta Nan Berkwits, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

On August 11, 1989, Telco Communications, Inc. ("Telco") initiated this action against the State of New Jersey. Telco filed a notice of motion for preliminary injunction on August 18, 1989. Telco seeks to enjoin New Jersey from enforcing various state statutes and administrative regulations which Telco claims violate the First and Fourteenth Amendments: *N.J.S.A.* 2A:170–20; *N.J.S.A.* 2A:170–20.11; *N.J. A.C.* 13:45A–17.3(c); *N.J.A.C.* 13:48–9.3; and *N.J.A.C.* 13:48–9.6.[1]

---

1. Although Telco's motion seeks an order enjoining New Jersey from enforcing *N.J.A.C.* 13:45A–17.3, Telco's complaint specifically limits its request to *N.J.A.C.* 13:45A–17.3(c). Therefore, I will not rule on whether a preliminary injunction should issue with respect to the other provisions of *N.J.A.C.* 13:45A–17.3. Also, although Telco's complaint requests that the court enjoin New Jersey from enforcing *N.J.A.C.* 13:45A–17.4(a) and (b), Telco's notice of motion for preliminary injunction and the claims section of its complaint omit any reference to these

New Jersey cross-moves for dismissal on the ground that the abstention doctrine prevents a federal court from exercising jurisdiction.

## PLAINTIFF

Telco is a professional solicitor that represents police and fire fighter associations throughout the United States. Hayes' Affidavit, ¶ 2. In connection with its solicitation activities, "the sales representatives under contract to Telco are instructed to promote the interests of Telco's clients on issues of public health and safety." *Id.*, ¶ 4. Telco also "publishes a series of books on issues of public health and safety (*e.g.*, Children's Safety, Drug and Alcohol Awareness, Fire Prevention) and arranges for the sale of advertisements in these books on behalf" of its clients. *Id.*, ¶ 2. While soliciting contributions, Telco's sales representatives frequently refer to recent local events. *Id.*, ¶ 4. Telco notes that in soliciting contributions from a business its sales representatives must often repeatedly contact the organization in order to reach someone with appropriate authority. *Id.*, ¶ 5.

Telco is licensed to engage in charitable solicitation in New Jersey. *Id.*, ¶ 1. Telco has contracted with several New Jersey fire fighter organizations to solicit contributions and publish a book on their behalf. *Id.*, ¶ 3. Telco has also contracted with New Jersey police athletic leagues to publish a book and solicit the purchase of advertisements on their behalf. *Id.* Several police fraternal organizations have expressed an interest in contracting with Telco, but Telco has been denied permission to solicit on behalf of these organizations because such contracts are illegal under the New Jersey statutes challenged in this ac-

tion. *Id.*, ¶ 6. Also, Telco has been charged with failing to file with New Jersey the text of its salespersons' oral solicitations as required by provisions challenged in this action. *Id.*, ¶ 6.

## CHALLENGED STATUTES AND REGULATIONS

*N.J.S.A.* 2A:170–20 prohibits police organizations from employing professional solicitors.

*N.J.S.A.* 2A:170–20.11 requires certain disclosures in connection with telephone solicitations "for charitable purposes, or ... which [are] implied in any way as being for charitable purposes." Upon initially contacting potential donors, the solicitor must disclose the name, address and nontax-exempt status of each beneficiary organization or fund. If a purchase is involved, the solicitor must disclose the percentage of the purchase price that is deductible as a charitable contribution under federal law. The solicitor must also disclose the percentage of any purchase price that will be given to a charitable organization or fund. If there is no beneficiary organization or fund, the statute further requires the disclosure of the manner in which any money collected will be used for charitable purposes and the percentage of any purchase price that will be used for such purposes.[2]

*N.J.S.A.* 2A:170–20.12 provides that any person violating either *N.J.S.A.* 2A:170–20 or *N.J.S.A.* 2A:17–20.11 is "a disorderly person."

*N.J.A.C.* 13:45A–17.3(c) provides that before commencing any oral solicitation of advertisements, a publication must file with the Attorney General of New Jersey the portion of the text of the solicitation which contains the disclosures required by *N.J.A.C.* 13:45A–17.3(a).[3] Every violation

provisions. Consequently, whether New Jersey should be preliminarily enjoined from enforcing *N.J.A.C.* 13:45A–17.4(a) and (b) will not be considered here.

2. *N.J.S.A.* 2A:170–20.11 also requires certain disclosures when non-charitable solicitations are made by telephone. These requirements of the statute are not challenged by Telco and therefore will not be addressed here.

3. *N.J.A.C.* 13:45A–17.3(a) requires that certain disclosures preface every oral solicitation of an

advertisement that is to be placed in a publication "which relates to, purports to relate to, or which could reasonably be construed to relate to police, law enforcement personnel or firefighters but which is not affiliated with any police or firefighting organization": (1) the publication is a for-profit, commercial enterprise; (2) the solicitor's name "and the fact that the solicitor is a salaried or commissioned salesperson, as the case may be, and is not a police or law enforcement officer or firefighter"; (3) the publication is not affiliated with any police or

of *N.J.A.C.* 13:45A–17.3 is a violation of *N.J.S.A.* 56:8–2 and *N.J.S.A.* 56:8–2.7. Under these statutes, it is unlawful to engage in any unconscionable commercial practice in connection with the solicitation of contributions or the sale of any goods or services.

*N.J.A.C.* 13:48–9.3 prohibits resolicitation of persons or organizations "[w]hen a request for a charitable contribution is denied, ... until a reasonable period has elapsed. For the purpose of this section a rebuttable presumption shall exist that any period of less than three months is not reasonable."

Under *N.J.A.C.* 13:48–9.6, the text of any oral solicitation must be filed with New Jersey's Charitable Registration Section before any such solicitation is commenced. The text must contain certain disclosures which are nearly identical to the required disclosures of *N.J.S.A.* 2A:170–20.11.[4]

## DISCUSSION

### I. DISMISSAL

■ New Jersey's motion to dismiss is based entirely on the abstention doctrine "which involves a discretionary exercise of a court's equity powers in declining to adjudicate claims within the scope of its statutory jurisdiction" in order to further comity, federalism and judicial economy. *D'Iorio v. County of Delaware*, 592 F.2d 681, 685 (3d Cir.1978). Under the abstention doctrine, federal courts abstain from exercising jurisdiction: (1) where constitutional adjudication is avoidable by a definitive ruling on state issues, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) where the pending issues involve important, complex and comprehensive state regulations, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); or (3) where there are pending state proceedings involving identical disputes, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)). *See also New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. ——, ——, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989).

New Jersey argues that abstention is appropriate here: state court review could obviate the need for federal review; Telco's suit interferes with a complex state regulatory scheme involving important state interests; and there is a pending administrative proceeding between Telco and New Jersey.

### A. Pullman Abstention

■ In *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321,

---

fire fighting organization; and (4) "no portion of the purchase price of any advertisement inures to the benefit of any police, firefighter or charitable organization ... or if such benefit does exist, the exact amount, stated as a percentage of the purchase price, of such benefit." Pursuant to *N.J.A.C.* 13:45A–17.3(d), where a sale of advertising occurs by means of oral solicitation, prior to receiving any money the publication and purchaser must execute a written agreement stating each mandatory disclosure.

4. Under *N.J.A.C.* 13:48–9.6(b), the solicitor must disclose: (1) the name and address of all recipient organizations or funds; (2) the charitable purposes for which any collected money will be used; (3) the percentage of the contribution or purchase price which will be given to the charitable organization or fund; (4) the percentage of the contribution or purchase price which will be used for each charitable purpose; (5) the nontax-exempt status of the organization or fund; and (6) the percentage of the purchase price that may be deducted as a charitable contribution under federal law.

2326–27, 81 L.Ed.2d 186 (1984), the Court held that under *Pullman* federal courts should abstain from deciding cases where difficult and unsettled state law questions must be resolved before a substantial federal constitutional question can be decided. The Court noted, however, that "federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Midkiff,* 467 U.S. at 236, 104 S.Ct. at 2327 (quoting *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965)). Abstention from federal jurisdiction is not required where " 'the naked question, uncomplicated by [ambiguous language], is whether the Act on its face is unconstitutional.' " *Id.* 467 U.S. at 237, 104 S.Ct. at 2327 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971)).

In *D'Iorio,* 592 F.2d at 685–86, the Third Circuit identified three "special circumstances generally prerequisite to the application of" the *Pullman* doctrine:

> First, there must be uncertain issues of state law underlying the federal constitutional claims brought in the federal court. Second, these state law issues must be amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims. And third, it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies.

None of these prerequisites is present in this action as there are no uncertain issues of state law underlying Telco's constitutional claim. The statutes and regulations which Telco challenges are not ambiguous or complex. Deciding whether the challenged provisions are constitutional is more appropriate for federal than state courts, and "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1981).

**B. *Burford***

■ Under the Court's holding in *Burford,* in certain circumstances federal courts are prohibited from interfering with "the proceedings or orders of state administrative agencies." *New Orleans,* 109 S.Ct. at 2514. In *Burford,* the "constitutional challenge was of minimal federal importance, involving solely the question of whether" a state agency "had properly applied Texas' complex oil and gas conservation regulations." *Id.* at 2513. The Third Circuit has identified three factors for determining whether *Burford* abstention is appropriate: "(1) the subject of the regulation be of significant and special concern to the state; (2) the state regulatory scheme be detailed and complex; (3) the federal issues be unresolvable without requiring the district court to immerse itself in the technicalities of the state's scheme." *Izzo v. Borough of River Edge,* 843 F.2d 765, 769 (3d Cir.1988). In the case at bar, *Burford* abstention is inappropriate under this test.

Although regulating charitable solicitation in order to prevent fundraising abuses is of important concern to New Jersey, the underlying regulatory scheme and challenged provisions in the case at bar are not complex. In resolving Telco's constitutional claims, the district court will not become "entangled in a skein of state law that must be untangled before the federal case can proceed." *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). The statutes and regulations Telco challenges simply ban the use of professional fundraisers by police organizations; require certain disclosures in connection with telephone and other oral solicitations; require the filing of the text of any oral solicitation; and prohibit resolicitation of persons or organizations for at least three months. Moreover, "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with

state regulatory law or policy." *New Orleans,* 109 S.Ct. at 2514 (quoting *Colorado,* 424 U.S. at 815–16, 96 S.Ct. at 1246).

### C. *Younger*

■ *Younger* abstention is appropriate "only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989). Moreover, *Younger* abstention is not appropriate "[e]ven if the necessary three predicates exist ... [if] extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant potential for irreparable harm to the federal interests asserted." *Id.*

On July 21, 1989, the New Jersey Division of Consumer Affairs ("Division") commenced an administrative proceeding which is still pending against Telco in the New Jersey Office of Administrative Law. In this proceeding, the Division seeks an administrative ruling that a telemarketing director is a professional fundraiser under *N.J.S.A.* 45:17A–3(c) and therefore must be registered and bonded under *N.J.S.A.* 45:17A–8.

In *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 2723–24, 91 L.Ed.2d 512 (1986) (the Court held that *Younger* prevented issuance of a federal injunction against an on-going sex-discrimination proceeding before the Ohio Civil Rights Commission), the Court stated that an adequate opportunity to raise federal claims exists where "constitutional claims may be raised in state-court judicial review of the administrative proceeding." [5] *Dayton Christian Schools* is inapposite here. Telco does not seek to enjoin or preempt the pending state proceeding which is wholly unrelated to Telco's constitutional claims and therefore is completely distinct from the action at bar. Whether the statutes and regulations challenged in this action are constitutional has absolutely no bearing on whether a telemarketing director is a professional fundraiser. Telco cannot assert its claims in the action at bar in the pending proceeding or upon appeal to the state courts. Thus, as the on-going administrative proceeding does not provide an opportunity for Telco to raise its constitutional claims, *Younger* abstention is inappropriate.

## II. PRELIMINARY INJUNCTION

To be granted a preliminary injunction, the moving party must demonstrate: (1) a reasonable probability of success on the merits; (2) that irreparable injury will result if the motion is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that granting preliminary relief will be in the public interest. *Ecri v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987); *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985).

### A. *Probability of Success on the Merits*

■ Charitable solicitations are "so intertwined with speech that they are entitled to the protections of the First Amendment." *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 959, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984); *see also Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 788, 108 S.Ct. 2667, 2673, 101 L.Ed.2d 669 (1988); *Cornelius v. NAACP Legal Defense and Education Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980), the Court noted that

---

**5.** Whether this is actually the case is somewhat questionable. In *New Orleans,* 109 S.Ct. at 2518–19 n. 4, the Court stated that "[t]he fact that *Dayton Christian Schools* relied, as an alternative argument, upon the fact that the federal challenge could be made upon appeal to the state courts, see 477 U.S., at 629, 106 S.Ct., at 2724, suggests, perhaps, that an administrative proceeding to which *Younger* applies cannot be challenged in federal court even after the administrative action has become final. But we have never squarely faced the question."

Prior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with information and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

Moreover, charitable organizations do not lose their First Amendment protection merely by employing professional fundraisers. *See Munson*, 467 U.S. at 967 n. 16, 104 S.Ct. at 2852–53 n. 16. Professional fundraisers themselves are entitled to First Amendment protection. *See Riley*, 108 S.Ct. at 2680. "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Id.*

Thus, the principal issue in the case at bar, as in *Schaumburg* and *Riley*, is whether New Jersey "has exercised its power to regulate solicitation in such a manner as not unduly to intrude upon the rights of free speech." *Schaumburg*, 444 U.S. at 633, 100 S.Ct. at 834. Whether the challenged provisions are constitutional depends on whether they pass rigorous scrutiny analysis. In other words, each challenged provision must not impose "a direct and substantial limitation on" Telco's free speech rights "unless it serves a sufficiently strong, subordinating interest that [New Jersey] ... is entitled to protect[, and] ... it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Id.* at 636–37, 100 S.Ct. at 836; *see also Munson*, 467 U.S. at 960–61, 104 S.Ct. at 2848–49. The state bears the burden of demonstrating that its challenged provisions are constitutional. *See Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1230 (4th Cir. 1989).

### 1. N.J.S.A. 2A:170–20 [6]

█ New Jersey has regulated law enforcement solicitation since 1936 when it simply banned solicitation by police organizations, "except that members of any such organization who are members of a police department in any municipality or county may personally solicit such funds or contributions." 1936 N.J.Laws c. 35. In 1954, the New Jersey Law Enforcement Council ("Council"), pursuant to its statutory mandate, reported extensive illegal and unethical conduct by both paid solicitors and police organizations in connection with solicitations. New Jersey Law Enforcement Council, "Law Enforcement and Solicitations," (March 22, 1954) ("Council Report"). The Council made several specific recommendations "[t]o remedy the unwholesome solicitation practices disclosed by the Council's investigations." [7] *Id.* at 5.

---

**6.** In considering *N.J.S.A.* 2A:170–20, I am not invalidating the prohibition against courtesy and honorary membership cards.

**7.** All of the Council's recommendations were adopted by the New Jersey legislature. *N.J.S.A.* 2A:170–20 bans solicitation by paid fundraisers, restricts fundraising to active and retired law enforcement personnel who are or were members of law enforcement organizations, and

bans the solicitation of funds through the sale of advertisements. *N.J.S.A.* 2A:170–20.1 bans the issuance of courtesy and honorary membership cards except to present or retired law enforcement personnel "or to such other persons who have performed outstanding or meritorious public service." *N.J.S.A.* 2A:170–20.2 requires notification "not less than ten days prior to commencing any such solicitation or collection." The notification must be filed with the

In accordance with the Council's recommendations, *N.J.S.A.* 2A:170–20 continues to ban completely the use of paid fundraisers by police organizations and to limit fundraising on behalf of these organizations to active members who are or were law enforcement personnel. Thus, like the municipal ordinance in *Schaumburg,* 444 U.S. at 622, 100 S.Ct. at 828–29, which prohibited door-to-door and on-street "solicitation of contributions by charitable organizations that do not use at least 75% of their receipts for 'charitable purposes,' those purposes being defined to exclude solicitation expenses, salaries, overhead, and other administrative expenses," the statute in the case at bar imposes a direct and substantial limitation on free speech.

New Jersey asserts that *N.J.S.A.* 2A:170–20 is valid because police solicitation is inherently different from "garden-variety" charitable solicitation, and the statute is reasonably and narrowly tailored to serve the state's interests. New Jersey urges that those cases where the United States Supreme Court has struck charitable solicitation laws involved "generic solicitation restrictions not exclusively directed at police solicitation activity." New Jersey Surreply at 3. Specifically, New Jersey argues that those cases are inapposite "given: (1) the functional differences between police and garden-variety charitable organizations, (2) the distinctly coercive nature of police solicitation, and (3) the State's enhanced interest in regulating law enforcement matters in general." *Id.*

New Jersey asserts that police organizations are functionally distinguishable from charitable organizations because "police fraternal organizations are more akin to labor organizations than to charities." *Id.* at 4. However, New Jersey recognizes fire fighter unions as charitable organizations for First Amendment purposes. As there is no basis for distinguishing the charitable nature of fire fighter unions from that of police organizations, there is no basis for determining that fire fighter unions but not police organizations are charities entitled to First Amendment protection.

In determining whether a charitable organization is entitled to First Amendment protection, the relevant distinctions are between protected and unprotected speech and between noncommercial and commercial speech. Solicitation on behalf of police organizations is not unprotected or commercial speech simply because police organizations may engage in certain noncharitable activities. In *Riley,* the Court noted that where "the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase.... [W]e apply our test for fully protected expression." 108 S.Ct. at 2677. Thus, even where professional fundraiser's speech partly concerns noncharitable matters, any limitations on that speech are subject to the same standard for evaluating limitations on charitable solicitation.

In *Munson,* the Court upheld the standing of a professional fundraiser whose Maryland customers included various chapters of the Fraternal Order of Police to assert its clients' First Amendment interests.

county prosecutor or the Attorney General of New Jersey, and it must include, *inter alia,* a description of the solicitation program, a description of the purpose for which the funds solicited will be used, and a statement that an audit, which will be available for public inspection, will be made of the collections. *N.J.S.A.* 2A:170–20.2 also requires that upon the close of any solicitation campaign the organization file a report stating, *inter alia,* the method of solicitation, the amount of money collected, the expenses incurred, the identity of the independent auditor, and the purpose for which the funds have been or will be used. Under *N.J.S.A.* 2A:170–20.3, all moneys collected must be deposited in a separate trust fund and used only for the welfare purposes for which such moneys

were solicited. Under *N.J.S.A.* 2A:170–20.4, all law enforcement organizations soliciting funds in New Jersey must comply with the state's regulations. Also, *N.J.S.A.* 2A:170–20.4 designates the Attorney General of New Jersey as the agent for the acceptance of process of all law enforcement organizations that solicit in the state. Under *N.J.S.A.* 2A:170–20.5, impersonating law enforcement organization members or employees is a disorderly person offense. Under *N.J.S.A.* 2A:170–20.6 and *N.J.S.A.* 2A:170–20.-7, it is unlawful to cause or conspire with another to violate the Disorderly Person Act. Under *N.J.S.A.* 2A:170–20.9, it is unlawful to solicit funds for publications that falsely claim to be published by or on behalf of law enforcement organizations.

The Court noted that the fundraiser's interests were completely compatible with those of the "charities it represents" and thus impliedly recognized police organizations as charitable organizations. 467 U.S. at 958, 104 S.Ct. at 2847–48. Also, in *Schaumburg,* 444 U.S. at 637–38, 100 S.Ct. at 836–37, the Court stated that organizations that are primarily engaged in research, advocacy or public education are charities. Telco notes that "[i]t is common for police organizations to raise funds for many different purposes, ranging from death and disability benefits for its members, to legal fees for labor negotiations, to new equipment, to supporting drug counseling and community centers." Telco Reply at 15–16.

The coercive nature of police solicitation and the state's enhanced interest in regulating law enforcement matters to maintain public confidence and law enforcement integrity are not disputed. *See, e.g., Gasparinetti v. Kerr,* 568 F.2d 311, 315 (3d Cir. 1977) ("The area of unregulable [sic] speech available to public employees is ... narrower than that available to the public at large"). Rather, *N.J.S.A.* 2A:170–20 violates the Equal Protection Clause because it fails to further the state's interests by rational and narrowly drawn regulations.[8] *See Police Department v. Mosley,* 408 U.S. 92, 95, 101, 92 S.Ct. 2286, 2289–90, 2293, 33 L.Ed.2d 212 (1972) (the Court held that a Chicago disorderly conduct ordinance permitting only peaceful labor picketing at schools violated the Equal Protection Clause by making an impermissible distinction between labor picketing and other peaceful picketing). *N.J.S.A.* 2A:170–20 treats law enforcement organizations differently than other charitable organizations and paid fundraisers differently than law enforcement personnel, but no "appropriate governmental interest [is] suitably furthered by th[is] differential treatment." *Mosley,* 408 U.S. at 95, 92 S.Ct. at 2290. Also, the statute violates the First Amendment because it unduly burdens protected speech.

New Jersey baldly asserts that professional solicitors are more likely than law enforcement personnel to engage in improper conduct. New Jersey further asserts that "[t]he belief is that law enforcement officers acting in the same area and with the same group of people they serve, are less likely to engage in 'questionable' practices because there already exists a tangible mutually supportive relationship between the solicitors and potential donors."[9] New Jersey Response at 31. However, New Jersey not only utterly fails to support these assertions, but they seem totally inconsistent with its other arguments supporting *N.J.S.A.* 2A:170–20:

> These circumstances along with the public's natural dependence upon and, consequently, desire to please enforcement personnel, render requests for money to support a law enforcement organization inherently coercive. Whether by the act of solicitation or by the manner of the solicitor, the prospective donor may not feel free to deny the request. The donor is likely to perceive a contribution as the necessary *quid pro quo* for the police to continue to function on his or her behalf. There is also the belief, mistaken or otherwise, that a contribution to a police organization "buys" special consideration by police officers, whether in enforcing the law on behalf of the donor or in exercising discretion not to enforce the law against the donor.

New Jersey Response at 28. These reasons for banning paid solicitors are at least

---

8. New Jersey urges that "[s]ince the State possesses the power to completely ban solicitation by or on behalf of police organizations, it certainly possesses the power to take less drastic measures in an attempt to effectively regulate it." New Jersey Brief at 30. I need not address this issue. Even if New Jersey is correct, any measures it takes that implicate the Free Speech and Equal Protection Clauses must be rational and narrowly tailored. As *N.J.S.A.* 20A:170–20 completely prohibits solicitation by professional fundraisers, but only regulates direct solicitation by law enforcement personnel, the statute is not reasonable or narrowly tailored.

9. The state urges that "[b]y narrowly confining its ban on professional fund-raisers to the police solicitation context, New Jersey has properly attempted to regulate only those solicitations that it has determined to pose the greatest threat to its legitimate interests." New Jersey Surreply at 8.

as applicable to banning direct police solicitation. Solicitation by the former is no more likely than solicitation by the latter to result in real or perceived coercion. In fact, donors might perceive less coercion if police officers were not engaged in direct solicitation. Many of the abuses described in the 1954 Council Report, for example, relate to paid solicitors impersonating police officers. Thus, given that New Jersey permits police solicitation, the state can just as effectively protect law enforcement integrity by more rational and narrowly tailored means than an absolute ban on paid solicitors.[10]

New Jersey argues that "the statutory scheme must be viewed as a whole in order to appreciate how it serves the State's interest." New Jersey Response at 31. Under New Jersey's present statutory scheme, pre-1954 abuses are unlikely to reoccur as a result of invalidating the provisions challenged here. *See N.J.S.A.* 2A:170-20 to :170-20.12; *N.J.S.A.* 45:17A-1 to :17A-17. New Jersey has enacted several provisions that enable law enforcement organizations' activities and the activities of professional solicitors on their behalf to be effectively monitored and regulated: *e.g.*, *N.J.S.A.* 2A:170-20 to :170-20.5 and :170-20.9 regulate fundraising by law enforcement organizations; *N.J.S.A.* 2A:170-20.6, :170-20.7, and :170-20.11 and *N.J.S.A.* 45:17A-4 to :17A-7 regulate fundraising by all charitable organizations; and *N.J.S.A.* 45:17A-8 to :17A-14 regulate fundraising by professional fundraisers.[11] Striking the provisions which Telco challenges will neither nullify nor undermine these other provisions.

In addition to imposing existing provisions on paid solicitors, New Jersey can effectively prevent them from committing abuses by adopting other less burdensome measures than an outright ban. For example, New Jersey might prohibit paid solicitors from disclosing those persons or organizations who declined to make contributions. Also, the state may "require a fundraiser to disclose unambiguously his or her professional status." *Riley*, 108 S.Ct. at 2679 n. 11.

Finally, the statute's prohibition on the solicitation of contributions in exchange for advertising is also unconstitutional. There is no rational relation between this prohibition and New Jersey's interest in protecting law enforcement integrity. This is borne out by the exception to the prohibition. Specifically, *N.J.S.A.* 2A:170-20 permits the solicitation of contributions in exchange for advertising in a publication produced "in connection with a social event or annual association conference, which is sponsored by such organization or association and where admission to the event is sold to the general public." However, the statute prohibits the solicitation of contributions in exchange for advertising in publications produced in connection with such speech as health and safety education. There is no rational basis for this inconsistent result.

### 2. N.J.S.A. 2A:170-20.11

As *N.J.S.A.* 2A:170-20.11 mandates certain disclosures in connection with telephone solicitations upon initially contacting potential donors, it is content-based. *See Riley*, 108 S.Ct. at 2677 (the Court stated that "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech"). In *Riley*, the Court

---

10. In *State v. Maine State Troopers Ass'n*, 491 A.2d 538, 543 (Me.1985), a case which is heavily relied on by New Jersey, the Supreme Judicial Court of Maine upheld a statute banning direct solicitation by law enforcement officers. However, the court held that an exception to the statute that permits persons other than state game wardens to engage in solicitation on behalf of game warden service associations must also apply to law enforcement associations.

11. For example, the 1954 Council noted that "[l]aw enforcement organizations permitted exploitation of the public" by providing professional fundraisers "with everything necessary to give the public the impression that the solicitation was being carried on directly by law enforcement organizations." Council Report at 41. This is prevented by *N.J.S.A.* 2A:170-20.5 which prohibits unauthorized persons from impersonating law enforcement organization members or employees.

applied the test for fully protected speech in striking a North Carolina requirement that professional fundraisers disclose the average percentage of their gross charitable solicitation receipts from the previous year that was turned over to charities. The Court noted that the "lodestars in deciding what level of scrutiny to apply to a compelled statement must be the nature of the speech taken as a whole and the effect of the compelled statement thereon." *Id.* New Jersey's compelled disclosure requirements interfere with charitable solicitations and "will almost certainly hamper the legitimate efforts of professional fundraisers to raise money for the charities they represent." *Id.* at 2679. Consequently, New Jersey's disclosure requirements are subject to exacting First Amendment scrutiny and, with the exception of *N.J.S.A.* 2A:170-20.11(a)(1), under this standard are unconstitutional.[12]

*N.J.S.A.* 2A:170-20.11(a)(2)-(4) (requiring disclosure of (a) the percentage of the purchase price that will be given to charitable organizations or funds, or if there are no beneficiary organizations or funds, the percentage of the purchase price that will be used for charitable purposes, and (b) the manner in which the money collected will be used for charitable purposes if no purchase is involved and there are no beneficiary organizations or funds) are essentially the same as the North Carolina percentage disclosure requirement and therefore invalid under *Riley.*[13] *N.J.S.A.* 2A:170-20.-11(a)(5) (requiring disclosure of the charitable organization's or fund's nontax-exempt status), and *N.J.S.A.* 2A:170-20.11(a)(6) (requiring disclosure of the percentage of the purchase price that may be deducted as a charitable contribution) are analogous to examples cited in *Riley* as unconstitutionally compelled disclosures:

We would not immunize a law requiring a speaker favoring a particular government project to state at the outset of every address the average cost overruns in similar projects, or a law requiring a speaker favoring an incumbent candidate to state during every solicitation that candidate's recent travel budget. Although the foregoing factual information might be relevant to the listener, and, in the later case, could encourage or discourage the listener from making a political donation, a law compelling its disclosure would clearly and substantially burden the protected speech.

*Riley,* 108 S.Ct. at 2678. Also, *N.J.S.A.* 2A:170-20.11(a)(5) and (a)(6) are unconstitutional because they risk favoring tax-exempt over nontax-exempt charities and discouraging professional fundraisers from soliciting on behalf of the latter. *See id.* at 2679.

As in *Riley,* in the case at bar "more benign and narrowly tailored options are available[ ] ... [that] would communicate the desired information to the public without burdening a speaker with unwanted speech during the course of a solicitation." *Riley,* 108 S.Ct. at 2679. For example, New Jersey can "vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements." *Id.* Even requiring that the disclosures of *N.J.S.A.* 2A:170-20.11(a) follow telephone solicitations and be made in writing (*e.g.,* on donors' receipts) would be less burdensome. *See, e.g., Carbaugh,* 885 F.2d at 1232 (the court noted that a Virginia requirement that professional solicitors disclose in writing the availability of financial statements "can be easily met through notation on the donor's receipt").

---

12. In addition, the rational relation between *N.J. S.A.* 2A:170-20.11 and the state's interest in protecting law enforcement integrity is doubtful because the statute only applies to telephone solicitation. Assuming that the required disclosures advance the state's interest, there is no basis for compelling these disclosures only in this context.

13. In fact, New Jersey concedes this: "In light of the decision in *Riley,* defendants will not

raise a defense to the challenged portion of the statute and regulations that mandate disclosure of the percentage of any contribution that will be used for charitable purposes." New Jersey Response at 46–47. Also, solicitation for charitable purposes (*e.g.,* to raise money to distribute directly to disaster victims or to the homeless) is protected speech regardless of whether such solicitation is for a charitable organization or fund.

■ Unlike *N.J.S.A.* 2A:170–20.11(a)(2) to (a)(6), *N.J.S.A.* 2A:170–20.11(a)(1) (requiring disclosure of the name and address of each beneficiary charity) is "a narrowly tailored requirement [that] would withstand First Amendment scrutiny." *Riley*, 108 S.Ct. at 2679 n. 11 (the Court held that a state may "require a fundraiser to disclose unambiguously his or her professional status"). These compelled disclosures enable potential donors to verify the authenticity of the solicitation and the recipient charity and are not unduly burdensome.

### 3. N.J.A.C. 13:45A–17.3(c)

■ Under *N.J.A.C.* 13:45A–17.3(c), publications must file a copy of that portion of the text of any oral solicitation of advertisements which contains the disclosures required by *N.J.A.C.* 13:45A–17(a). The text must be filed with the Attorney General of New Jersey prior to commencing solicitation. This regulation is substantially identical to a Virginia requirement that directed solicitors to file the text of oral solicitations with the Commissioner of the Virginia Office of Consumer Affairs ("OCA") at least ten days prior to commencing solicitations. In *Carbaugh*, 885 F.2d 1225, the Fourth Circuit recently struck this requirement as an unconstitutional prior restraint.[14] "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976).

In *Carbaugh*, the Virginia Office of Consumer Affairs argued that the challenged requirement prevented fraud and misrepresentation. 885 F.2d at 1233.

> Moreover, OCA argues that this requirement is the only effective regulation of telephone solicitation and is not unduly burdensome....
>
> ....
>
> Appellant contends that the practical application of this section is not burdensome: that the Commissioner does not review the script for content but only checks for potential misrepresentations; that the Commissioner relies only on his powers of persuasion to get a solicitor to alter a possible misrepresentation; that the Commissioner tolerates deviations from the script; that the Commissioner does not absolutely require a script (but only an outline), and that the maximum period of approval for scripts is ten days and is often much shorter.

*Id.* Likewise, New Jersey asserts that "[r]equiring the submission of the solicitation text which includes these disclosures is the only effective way to ensure that fundraisers are requiring their solicitors to make the disclosures." New Jersey Response at 49. However, even assuming that *N.J.A.C.* 13:45A–17.3(c) is the most effective means of monitoring oral solicitation, the *Riley* Court "reaffirm[ed] simply and emphatically that the First Amendment does not permit the State to sacrifice speech for efficiency." 108 S.Ct. at 2676; *see also Carbaugh*, 885 F.2d at 1233.

Like the statute in *Carbaugh*, *N.J.A.C.* 13:45A–17.3(c) places the state in a censor's position even though it does not require that the solicitation text be approved by the state. The regulation enables New Jersey

---

**14.** The case at bar, like *Carbaugh*, is distinguishable from *Times Film Corp. v. Chicago*, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), and *Shapero v. Kentucky Bar Association*, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). *See Carbaugh*, 885 F.2d at 1234. *Times Film* involved prior restraint of motion pictures. Although the Court upheld an ordinance requiring the prior submission of motion pictures to a censorship board, the Court later modified its holding, permitting the prior submission of motion pictures only where there are adequate procedural safeguards. *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

In *Times Film*, the Court did not consider censorship of the printed or spoken word, and the procedural safeguards which the Court later required are totally absent here. *See Telco Communications, Inc. v. Carbaugh*, 700 F.Supp. 294, 299 (E.D.Va.1988), *aff'd in part, rev'd in part*, 885 F.2d 1225 (4th Cir.1989). Also, *Shapero* is inapposite because the statute there imposed prior restraints on solicitation by lawyers, which "is commercial speech, *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978), and hence not subject to the exacting scrutiny required here." *Carbaugh*, 885 F.2d at 1234.

to review a solicitor's prospective speech to determine whether it complies with the state's disclosure requirements. Impliedly, upon a determination that a solicitor's text is unlawful, New Jersey would move to have it altered or to suppress its use.[15] As the Fourth Circuit noted in *Carbaugh*, the state

> has a legitimate interest in preventing fraud and misrepresentation, there is a thin line between reviewing a script for misrepresentation and reviewing it for content. Section 57–61D provides no guidelines for OCA review and thus permits OCA officials to recast solicitation scripts so as to reflect their judgment as to how a solicitation can be made. Without guidelines, unpopular or controversial organizations may be subject to stricter scrutiny. Moreover, the requirement might dissuade some organizations from soliciting in Virginia, *see Riley*, 108 S.Ct. at 2676, and discourage others from submitting scripts which, although accurate, may risk the displeasure of state officials.
>
> . . . .
>
> ... [B]ureaucratic review of solicitation scripts is ... rife with the potential for abuse.... While the OCA may only "request" script alterations before approval is given to begin solicitations, the practical effect of such a "request" is likely to go beyond persuasion.... Scripts, moreover, are required.... Monitoring devices, such as that in Va. Code Ann. § 57–61 D, are a powerful inducement toward orthodox presentation of charitable solicitations—a result which the variety in character of charitable organizations belies and which the

commitment to diverse expression in the First Amendment forbids.

885 F.2d at 1233–34.

Simply requiring solicitors to file copies of the text of any oral solicitation does not ensure that the text will be followed. Therefore, this filing requirement is neither more appropriate nor more useful in the context of oral solicitation than in the context of written solicitation. As the state can protect its interests by vigorously enforcing its other charitable solicitation statutes and regulations and its antifraud and misrepresentation statutes, there are less burdensome means than *N.J.A.C.* 13:45A–17.3(c) of protecting potential donors against fraud and misrepresentation. Thus, *N.J.A.C.* 13:45A–17.3(c) imposes a prior restraint on speech which cannot survive the "heavy presumption against its constitutional validity." *Bantam Books v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

### 4. N.J.A.C. 13:48–9.3

■ *N.J.A.C.* 13:48–9.3, prohibiting resolicitation of persons or organizations, is a content-neutral time restriction of speech.[16] In *Pennsylvania Alliance for Jobs and Energy v. Council of Munhall*, 743 F.2d 182, 185 (3d Cir.1984), the Third Circuit stated that such restrictions in public forums are subject to heightened scrutiny (*i.e.*, the least restrictive alternative standard), but in non-public forums "are to be measured by the *Heffron* 'ample alternative channels of communication' test." *Id.* (quoting *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 648, 101 S.Ct. 2559, 2564, 69 L.Ed.2d

---

**15.** New Jersey asserts that "[s]ince the 1984 decision in *Munson*, New Jersey has not required the pre-filing of the script, but rather that the script be filed if not during, then after solicitation. There has been no threat to Telco of prosecution under *N.J.A.C.* 13:48–9.6 or *N.J.A.C.* 13:45A–17.3." New Jersey Surreply at 13. However, the regulation will continue to chill protected speech as long as filing can be required before or during solicitations. New Jersey's voluntary decision not to enforce the regulation's plain language has no bearing on whether the regulation should be struck as an unconstitutional prior restraint on free speech.

**16.** Telco argues that the regulation is not content-neutral because it does not apply to commercial solicitation. However, this does not render it "content-based in the sense that triggers the 'least restrictive alternative' standard." *Pennsylvania Alliance for Jobs and Energy v. Council of Munhall*, 743 F.2d 182, 186 (3d Cir. 1984) (the court held that transient vendor ordinances are not content-based simply because certain commercial activities are exempt from their coverage).

298 (1981)). *N.J.A.C.* 13:48–9.3 is invalid regardless of whether it is applied to solicitations in public or non-public forums.

Even assuming that *N.J.A.C.* 13:48–9.3 serves a significant governmental interest by protecting the public from harassing or annoying repeat solicitation, it is neither the least restrictive alternative, nor does it leave open ample alternative channels of communication. *N.J.A.C.* 13:48–9.3 imposes an absolute ban on all forms of resolicitation for a period of three months unless the solicitor can demonstrate that a shorter period of time is "reasonable." Thus, the regulation bans even the use of means of solicitation that are not necessarily harassing or annoying. For example, solicitors are prohibited not only from continuously calling potential contributors, but also from sending printed material along with requests for funds. As the regulation fails to target specifically harassing or annoying forms of repeat solicitation and it prevents all resolicitation for a period of three months, it is overbroad.[17]

### 5. N.J.A.C. 13:48–9.6

 In all relevant respects, the filing requirement of *N.J.A.C.* 13:48–9.6(a) is the same as the filing requirement of *N.J.A.C.* 13:45A–17.3(c). Thus, the former is unconstitutional for the same reasons the later is unconstitutional.[18] Likewise, as the disclosure requirements of *N.J.A.C.* 13:48–9.6(b) are essentially identical to the disclosure requirements of *N.J.S.A.* 2A:170–20.11(a), *N.J.A.C.* 13:48–9.6(b)(2)–(5) are unconstitutional and *N.J.A.C.* 13:48–9.6(b)(1) is constitutional for the same reasons that *N.J.S.A.* 2A:170–20.11(a)(2)–(6) are unconstitutional and *N.J.S.A.* 2A:170–20.11(a)(1) is constitutional, respectively.

### B. *Other Preliminary Injunction Requirements*

 As Telco's free speech rights are implicated by the challenged provisions, assuming Telco succeeds on the merits, it will suffer irreparable injury unless the preliminary injunction issues. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). The injury New Jersey will experience if the preliminary injunction is granted is less than that which Telco will suffer if it is not granted. The challenged provisions are not the cornerstone of New Jersey's charitable solicitation law and, as discussed above, suspending their application is not likely to adversely affect the integrity of New Jersey law enforcement. Thus, issuing the preliminary injunction is in the public interest both because the balance of equities strongly favors Telco and because the public has a compelling interest in the preservation of First Amendment rights.

### CONCLUSION

For the foregoing reasons, Telco's motion for preliminary injunction is granted with respect to each challenged provision except *N.J.S.A.* 2A:170–20.11(a)(1) and *N.J.A.C.* 13:48–9.6(b)(1). New Jersey's cross-motion for dismissal is denied. Telco is requested to submit an appropriate form of order.

---

**17.** In *Riley,* the Court struck a provision of a statute which provided that if a fundraiser's fee exceeded 35% of gross receipts collected it was presumptively unreasonable. The Court held that "we could not agree to a measure that requires the speaker to prove 'reasonableness' case by case based upon what is at best a loose inference that the fee might be too high.... This scheme must necessarily chill speech in direct contravention of the First Amendment's dictates." 108 S.Ct. at 2675, 2676.

**18.** In fact, the filing requirement of *N.J.A.C.* 13:48–9.6(a) is broader than the filing requirement of *N.J.A.C.* 13:45A–17.3(c). Although New Jersey states that only that portion of the solicitation text containing the *N.J.A.C.* 13:48–9.6(a) mandated disclosures (*i.e.,* not the entire text) must be filed prior to making any oral solicitation, this simply is not consistent with the regulation's plain language.