## AUBURN POLICE UNION, et al., Plaintiffs,

### v.

## James TIERNEY, as Attorney General of the State of Maine, Defendant.

### Civ. No. 90–0042–P.

United States District Court,
D. Maine.

Feb. 7, 1991.

---

Leland N. Chisholm, Portland, Me., for plaintiffs.

Errol Copilevitz, John P. Jennings Jr., Kansas City, Mo., Stephen L. Wessler, Dept. Atty. Gen., Augusta, Me., for defendant.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, Chief Judge.

The United States Magistrate Judge having filed with the Court on December 21, 1990, with copies to counsel, his Recommended Decision on Cross–Motions for Judgment on the Basis of a Stipulated Record, a copy of which is attached hereto and made part hereof as "Exhibit A"; and Defendant having filed, on January 2, 1991, his Objections to Portions of the Magistrate Judge's Recommended Decision and Request for De Novo Review by the District Court, to which Plaintiffs replied on January 8, 1991; and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and this Court concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and having determined that no further proceeding is necessary; it is *ORDERED* as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby *AFFIRMED;*

(2) Plaintiffs' Motion for Judgment on the Basis of a Stipulated Record is hereby *GRANTED;*

(3) Defendant's Motion for Judgment on the Basis of a Stipulated Record is hereby *DENIED;*

(4) Judgment is hereby entered *DECLARING* that the provisions of 25 M.R.S.A. § 3702, as applied to Plaintiffs herein, is unconstitutional because it is facially overly broad, operates as an impermissible prior restraint upon Plaintiffs, and violates Plaintiffs' right to equal protection of the laws;

(5) Defendant, and all others acting for, on behalf of, or in concert with the Defendant, are hereby *ENJOINED* from enforcement of 25 M.R.S.A. § 3702 against Plaintiffs in any manner inconsistent with the foregoing declaratory judgment, and

(6) Plaintiffs shall recover reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and to that end Plaintiffs' counsel shall file, within ten (10) days of the entry of this order, an application for such fees, setting forth the pertinent details required by the Court to assess the reasonableness thereof; and Defendant shall respond thereto within ten (10) days of receipt of such application.

## EXHIBIT A

## RECOMMENDED DECISION ON CROSS-MOTIONS FOR JUDGMENT ON THE BASIS OF A STIPULATED RECORD

DAVID M. COHEN, United States Magistrate, Judge.

■ In this lawsuit challenging the constitutionality of § 3702 of the Solicitation by Law Enforcement Officers Act ("Act"), 25 M.R.S.A. §§ 3701–06, the plaintiffs and defendant James Tierney, attorney general of the state of Maine ("State" or "defendant"), seek judgment on the basis of a stipulated written record.[1] This procedural device allows a court to resolve any lingering issues of material fact in reaching its decision on the merits. *Boston Five Cents Sav. Bank v. Secretary of the Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir.1985).

The plaintiff police unions and police officers[2] want to solicit advertising from the general public for inclusion in publications, Stipulated Facts ¶¶ 27–30; plaintiff Charles Underwood wishes to advertise in and receive copies of police publications, *id.* ¶ 13; and plaintiff R.H. McKnight Co., Inc. d/b/a Brent–Wyatt East, a professional fundraiser and publisher, seeks to solicit advertisements for publications on behalf of the plaintiff unions and officers, *id.* ¶¶ 14–15, 27–30. The Act effectively bars all of the above activities by virtue of its prohibition against solicitation of property from the general public "when the property, or any part of it, in any way benefits, is intended to benefit or is represented to be for the benefit of any law enforcement officer, law enforcement agency or law enforcement association...." 25 M.R.S.A. § 3702. Violation of § 3702 is punishable as an unfair-trade practice. *Id.*

The plaintiffs charge that the State, in violation of 42 U.S.C. § 1983, has deprived them of rights secured under the United States Constitution. Specifically, the plaintiffs contend that the Act violates the First and Fourteenth Amendments in that it serves as an unconstitutional prior re-

---

1. The plaintiffs and the State actually filed cross-motions for summary judgment. Plaintiffs' Motion for Summary Judgment; Defendant's Motion for Summary Judgment. However, the parties confirmed in conference that they in fact seek judgment on the basis of a stipulated written record. *See* Report of Conference of Counsel dated November 26, 1990.

2. Union plaintiffs are the Auburn Police Union, Stipulated Facts ¶ 7, the Portland Police Benevo-

lent Association, *id.* ¶ 8, and the Lewiston Police Union (a/k/a Local 545, International Brotherhood of Police Officers), *id.* ¶ 9. All are Maine not-for-profit corporations. *Id.* ¶¶ 7–9. Police-officer plaintiffs are Leonard Dexter, vice president of the Portland Police Benevolent Association, *id.* ¶ 10, Kevin MacDonald, secretary of the Portland Police Benevolent Association, *id.* ¶ 11, and David B. Chamberlain, secretary of the Lewiston Police Union, *id.* ¶ 12.

straint on their freedom of speech, is unconstitutionally vague, is unconstitutionally overbroad and denies them equal protection of the laws.[3] They therefore seek declaratory judgment of the unconstitutionality of § 3702 pursuant to 28 U.S.C. § 2201, preliminary and permanent injunctions against enforcement of § 3702 and recovery of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

The State observes that in 1985 the Supreme Court summarily dismissed an appeal from a Maine Supreme Judicial Court ("Law Court") decision rejecting constitutional challenges to the Act. *State v. Maine State Troopers Ass'n*, 491 A.2d 538 (Me.), *appeal dismissed*, 474 U.S. 802, 106 S.Ct. 34, 88 L.Ed.2d 28 (1985) (*"MSTA"*). Insofar as it resolves the same constitutional issues, *MSTA* is binding upon this court, the State asserts. The State additionally contests all of the plaintiffs' claims on the merits.

For the reasons explicated below, I recommend that the court grant the plaintiffs' motion, and deny the defendant's motion, for judgment on the basis of a stipulated written record. The Act should be declared unconstitutional on grounds it operates as a prior restraint, is facially overbroad and denies the plaintiffs equal protection of the laws. Accordingly, I recommend that this court permanently enjoin enforcement of § 3702 and award the plaintiffs attorney's fees pursuant to 42 U.S.C. § 1988.

## I. EFFECT OF SUPREME COURT'S SUMMARY ACTION

■ Summary actions by the Supreme Court are decisions on the merits of a case. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). As such, they are binding on lower courts if certain preconditions are met. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977) (per curiam). The Supreme Court has cautioned that lower courts must engage in a careful analysis to determine the precedential value of summary actions. *Id.* Summary affirmances or dismissals "without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Id.* Lower courts must assess precedential significance "in the light of all of the facts." *Id.* at 177, 97 S.Ct. at 2241 (observing that lower court had wrongly judged itself bound by a summary action based on "very different" facts). Finally, summary actions "should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved." *Id.* at 176, 97 S.Ct. at 2240–41. Summary actions remain controlling until such time as Court doctrinal developments undermine their validity. *Hicks*, 422 U.S. at 344–45, 95 S.Ct. at 2289–90.

■ The plaintiffs present four arguments for freeing their case from the yoke of *MSTA*. Plaintiffs' Reply to Defendant's Memorandum in Support of Motion for Summary Judgment ("Plaintiffs' Reply Memorandum") at 2–8. Three of the contentions lack merit: (1) that *MSTA* and the instant case turn on "very different" facts, (2) that *MSTA* broke with Supreme Court precedent and thus lacks binding force and (3) that doctrinal developments since *MSTA* undercut its precedential value. The fourth contention, however, is persuasive. Changes to the Act since 1985 significantly alter the nature of the issues raised. Hence, the Supreme Court's summary action in *MSTA* does not foreclose fresh consideration of the merits in the instant case.

### A. Factual Differences

The facts underlying *MSTA* and the instant case are strikingly similar. The defendant in *MSTA*, a Maine police association, sold advertising in a police publication in violation of the Act. The plaintiff Maine police officers and unions in the instant

---

**3.** It is important to note that, although the Act applies to law-enforcement agencies, officers and associations, 25 M.R.S.A. § 3701, the plaintiffs base their legal claims on its impact upon non-profit, or charitable, law-enforcement associations.

case wish to sell advertising in publications.

■ The plaintiffs observe that the advertising conducted in *MSTA* was by means "of letters, telephone calls, and in-person solicitations." Plaintiffs' Reply Memorandum at 6 (quoting *MSTA*, 491 A.2d at 540). They seek to distinguish their case in that they propose to hire a middleman—a professional solicitor who would employ such safeguards against coercion as written assurances that the police would visit no adverse consequences upon the reluctant customer. *Id.* at 6-7. Not every factual distinction is significant in assessing the precedential weight of a Supreme Court summary action. *Members of Jamestown School Comm. v. Schmidt*, 699 F.2d 1, 8-9 (1st Cir.), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983). In the context of the Supreme Court's summary dismissal of *MSTA*, this factual difference pales. The question presented to the Supreme Court on appeal was the constitutionality of the Act's prohibition on

> the sale of or attempt to sell any book, magazine or advertisement, when the sale benefits, is intended to benefit or is represented to be for the benefit of any Law Enforcement Association.... The enumerated acts are unlawful, regardless of whether the person performing the act is a law enforcement officer or not.

Appendix A to Memorandum in Support of Defendant James E. Tierney's Motion for Summary Judgment ("State's Memorandum") (Jurisdictional Statement) at 2. The Supreme Court therefore contemplated the question of complete prohibition of both direct and indirect solicitation.

### B. Breaking New Ground

The plaintiffs contend that the Law Court's decision in *MSTA* flew in the face

---

of established Supreme Court principles in that the Law Court imposed a blanket prohibition on a certain type of speech by an identifiable minority. Plaintiffs' Reply Memorandum at 7-8. The State asserts, and I agree, that the Law Court's opinion constitutes a straightforward application of preexisting Supreme Court law as enunciated in the leading cases of *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73, *reh'g denied*, 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980), and *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). State's Memorandum at 9; *MSTA*, 491 A.2d at 542.

### C. Doctrinal Developments

The plaintiffs argue that doctrinal developments since *MSTA* undermine its weight as binding precedent on this court. This contention fails. The plaintiffs cite only one Supreme Court case, *Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), in their list of opinions affecting *MSTA*. Lower-court cases cited, Plaintiffs' Reply Memorandum at 3, have no effect on the precedential value of *MSTA*.[4] Moreover, *Riley* itself does not demand reevaluation of *MSTA*. *Riley* applies *Schaumburg* and *Munson* to facts significantly different from those in *MSTA*. The statute struck down in *Riley* implicated state interests other than law enforcement, advanced through a strikingly different regulatory scheme than Maine's complete prohibition.

### D. Substantive Issues

The instant case poses two interrelated questions that appear to be identical to those determined in *MSTA:* (1) whether the Act violates the First and Fourteenth Amendment rights to free speech and (2) whether the Act is unconstitutionally overbroad.[5] Both questions were necessarily

---

**4.** As I read the Court's opinion in *Hicks,* lower courts are bound by Supreme Court summary actions unless doctrinal developments in the Supreme Court itself indicate otherwise. 422 U.S. at 344-45, 95 S.Ct. at 2289-90.

**5.** The defendant police union in *MSTA* also claimed, as do the plaintiffs here, that the Act

---

was void for vagueness. The two claims overlap in that both question the clarity of the phrase "the general public" in § 3702. However, the plaintiffs in the instant case, unlike the defendant in *MSTA,* additionally assert that the Act's use of the word "benefit" is impermissibly

decided by the Law Court and were squarely presented to the Supreme Court in the Jurisdictional Statement. Appendix A to State's Memorandum (Jurisdictional Statement) at 2, 7–9, E–1 to E–2.

Nonetheless, as the plaintiffs argue, the issues diverge in a fundamental respect. The Legislature has revisited the Act since the *MSTA* decision in 1985. Specifically, the Legislature amended the Act in 1989 to create an exception for the Department of the Attorney General, 25 M.R.S.A. § 3706 [6], and enacted special, private legislation to allow solicitation for a memorial to slain police officers, Exh. B to Stipulated Facts (Priv. & Spec.Laws 1989 ch. 47). The special law waived the provisions of § 3702 for one year to allow police officers not in uniform or any other person authorized by the Maine Chiefs of Police Association to solicit funds for the memorial. *Id.* On April 6, 1990 the governor approved a second private law extending the waiver for six months. Exh. A to Plaintiffs' Reply Memorandum (Priv. & Spec.Laws 1990 ch. 114). The State's attempt to minimize the importance of the private laws because of their temporary character, Reply Memorandum in Support of Defendant James E. Tierney's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("State's Reply Memorandum") at 7, is unavailing. As the plaintiffs correctly note, *MSTA* turned on the premise that all charitable solicitation by police officers and law enforcement organizations is "inherently coercive." Plaintiffs' Memorandum Brief in Support of Their Motion for Summary Judgment ("Plaintiffs' Memorandum") at 20 (quoting *MSTA*, 491 A.2d at 542, which in turn quoted Act's Statement of Fact). The enactment of the private laws calls that premise into question, undermining the binding

force of the Supreme Court's summary dismissal and of the Law Court's own conclusions.

## II. COUNT II(A): IMPERMISSIBLE VAGUENESS

■ The plaintiffs contend in Count II(A) that § 3702 of the Act is unconstitutionally vague on its face in that it provides inadequate notice of the conduct prohibited.[7] Complaint ¶ 39. The Act proscribes three intertwined behaviors: (1) solicitation of "property" (2) from "the general public" that (3) "benefits, is intended to benefit or is represented to be for the benefit of any law enforcement officer, law enforcement agency or law enforcement association." The plaintiffs specifically charge that the term "benefit" is subjective and arbitrary, *id.*, and that the Act's ban on solicitation of "the general public" raises questions as to whether that "public" includes such individuals as other police officers and members of the Attorney General's office, Plaintiffs' Memorandum at 25.

■ A statute is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Impermissibly vague statutes offend the Fourteenth Amendment right to due process in several ways. They "may trap the innocent by not providing fair warning," may open the door to "arbitrary and discriminatory enforcement," and may impinge on protected First Amendment free-speech rights. *Id.* at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted).

■ The Act's proscription of solicitation of "the general public" is not impermissibly vague. The Law Court in *MSTA* narrowly construed the phrase to mean "any mem-

---

vague. *Compare MSTA*, 491 A.2d at 543, *with* Complaint ¶ 39.

**6.** Section 3706 provides, in its entirety, "Nothing in this chapter prevents the Department of the Attorney General from distributing, publicizing and charging for the cost of consumer education materials, including descriptions of federal and state laws dealing with unfair and deceptive trade practices."

**7.** The State correctly observes that violation of 25 M.R.S.A. § 3702 is punishable by civil, rather than criminal, sanctions. State's Memorandum at 26. Nonetheless, the State wrongly asserts that the vagueness doctrine applies only to criminal statutes. *See, e.g., Whisenhunt v. Spradlin*, 464 U.S. 965, 970, 104 S.Ct. 404, 407–08, 78 L.Ed.2d 345, *denying cert. to* 701 F.2d 470 (5th Cir.1983) (Brennan, J., dissenting).

ber of the public other than members of the MSTA and their immediate families." *MSTA,* 491 A.2d at 541, 543. Clearly, a member of the Lewiston Police Union could solicit neither a member of the Auburn Police Union nor members of the Attorney General's office. He or she could solicit only other members of the Lewiston Police Union and their immediate families.

The plaintiffs next question the clarity of the Act's ban on solicitation of property that "benefits, is intended to benefit or is represented to be for the benefit of any law enforcement officer, law enforcement agency or law enforcement association." The plaintiffs wonder whether a "benefit" is necessarily the direct receipt of funds, Plaintiffs' Memorandum at 26, and whether contributions to a police-union fund for emergency donations to non-police officers qualify as "benefitting" the police, *id.* at 25. The plaintiffs contend that contributions to such a fund arguably would benefit a police union only intangibly, by enhancing its credibility and public recognition. *Id.* at 25–26.

The word "benefit" is neither defined in the Act nor construed by the Law Court. Nonetheless, the conduct prohibited is not as unclear as the plaintiffs suggest. The verb "benefit" means "to be useful or profitable to: aid, advance, improve...." *Webster's Third New International Dictionary* 204 (1981). The disjunctive "or" indicates that the benefit need not be "profitable"—financially rewarding—so long as it is "useful." Contributions to police charitable funds, while not "profitable" to the police, are "useful" to them in the intangible ways the plaintiffs suggest. A person of average intelligence comprehends, even without the aid of *Webster's,* that benefits take myriad forms. The average person would perceive that donations to a police charity fund benefit the police, regardless of whether all solicited funds eventually flow to non-police beneficiaries.

### III. COUNT II(B): UNCONSTITUTIONAL OVERBREADTH

A statute is overbroad if it includes protected, as well as unprotected, activities in its ambit. *MSTA,* 491 A.2d at 543. Overbreadth normally must be substantial to warrant a finding of facial unconstitutionality. *Id.* However, the Supreme Court has recognized a type of *per se* overbreadth if a statute is not narrowly tailored enough to serve legitimate state interests. *See, e.g., State v. Events Int'l, Inc.,* 528 A.2d 458, 461 (Me.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988) (citing *Munson,* 104 S.Ct. at 2852 & n. 13; *Schaumburg,* 444 U.S. at 637–39, 100 S.Ct. at 836–37).

Determination of the quality of the State's tailoring requires reconsideration of a question disposed of in *MSTA:* whether the Act unconstitutionally infringes the First Amendment right to free speech, as applied to the states through the Fourteenth Amendment. As the Law Court observed in applying the *Munson* and *Schaumburg* tests, charitable solicitation is protected under the First Amendment right to freedom of speech. *MSTA,* 491 A.2d at 542. The right, however is not absolute. *Id.* A state may burden charitable solicitation provided its regulations withstand strict scrutiny. *Id.* To do so, the state must demonstrate that the challenged law serves a compelling governmental interest and is narrowly tailored to be "the least restrictive means" of furthering that interest. *Id.* (citations omitted).

The plaintiffs question both the substantiality of the State's interest and the tailoring of its law. Plaintiffs' Memorandum at 17. The Law Court determined in 1985 that "[t]he State's interest in protecting the reputation of its law enforcement bodies is undeniably substantial. Indeed, we would be hard pressed to suggest a weightier interest." *MSTA,* 491 A.2d at 542. The Law Court held the Act sufficiently narrowly tailored in that "the mere act of solicitation is inherently coercive" and "the appearance of the transaction to third persons, serves to undermine public confidence in the integrity of the public office." *Id.* Relatedly, the Law Court rejected the contention that the Act was overbroad "[b]ecause the integrity of the

State's law enforcement agents is cast in doubt with every solicitation on their behalf...." *Id.* at 543.

As discussed above, subsequent to the Law Court's decision in *MSTA* the Legislature enacted a permanent waiver from § 3702 for certain Attorney General communications and an 18–month waiver to allow solicitation for a memorial to slain police officers. These actions crack the foundation upon which the Law Court judged the Act narrowly tailored: that the appearance of coercion inheres in every solicitation for the benefit of law-enforcement personnel. The Legislature effectively has admitted that its complete ban sweeps too broadly insofar as it encompasses the activities of a different kind of law enforcer—the Attorney General's office. Even more damaging, the Legislature has revealed its interest to be less than absolute by determining that it must selectively yield for causes such as the memorial. A complete prohibition on police solicitation is not narrowly tailored to Maine's evident interest in banning some, but not all, such solicitation. *See, e.g., Riley,* 487 U.S. at 801, 108 S.Ct. at 2679–80 ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.") (quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963) (citations omitted)). I conclude that § 3702 is thus unconstitutionally overbroad and invalid on its face.

To resurrect its statute, the State must isolate the elements of police solicitation that produce coercion and then tailor its statute to root them out evenhandedly. Provisions of the private law allowing solicitation for the memorial suggest, for example, that the State is particularly concerned that officers not solicit in uniform and that a single overseer approve and track all solicitors.[8] Exh. B to Stipulated Facts (Priv. & Spec.Laws 1989 ch. 47).

8. The plaintiffs suggest that the field of solicitation at the very least be widened to include as permissible solicitees other public officials, such as other law-enforcement unions and firefighters, on the grounds that the appearance of coercion is unlikely in such transactions. Plaintiffs'

## IV. COUNT I: PRIOR RESTRAINT

The plaintiffs contend that the Act constitutes an impermissible prior restraint in that it directly bans their constitutionally protected right to charitable solicitation, Complaint ¶¶ 32, 34, 36, and indirectly forces them to cease publication. Complaint ¶¶ 33–36. The plaintiffs therefore ask this court to apply the maxim that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) (citations omitted).

The Supreme Court has signalled that the doctrine of prior restraint applies to the act of charitable solicitation. *Munson,* 467 U.S. at 968–69, 104 S.Ct. at 2853–54. Schemes vesting discretion in administrators to license solicitors for charities or screen their messages have been struck down as impermissible prior restraints. *See id.; Famine Relief Fund v. West Virginia,* 905 F.2d 747, 753 (4th Cir.1990); *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1232–34 (4th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1923, 109 L.Ed.2d 286 (1990); *Telco Communications, Inc. v. Barry,* 731 F.Supp. 670, 682–83 (D.N.J.1990). Maine's direct prohibition avoids the vice of delegating power to administrators to prescreen solicitors or their messages. However, the Act silences by fiat an entire category of charitable solicitation. It is in this respect a form of censorship; it prejudges rather than punishes after the fact. *See, e.g., Near v. Minnesota,* 283 U.S. 697, 714, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931) (Founders envisioned security from legislative, as well as administrative, prior restraints). For the reasons discussed more fully above in the context of the overbreadth challenge, I conclude that the State's interest in protecting against coercive law-enforcement solicita-

Memorandum at 26. The plaintiffs also suggest the confinement of solicitation to professional fundraisers who would employ safeguards against coercion. Plaintiffs' Reply Memorandum at 6–7.

tion is not great enough to justify prior restraint.

## V. COUNT III: EQUAL PROTECTION

The plaintiffs persuasively argue that the State's distinction between solicitation for the memorial and all other law-enforcement solicitation offends their Fourteenth Amendment right to equal protection of the laws. Plaintiffs' Memorandum at 22–24. A state must demonstrate a substantial governmental interest for discrimination that implicates First Amendment rights. *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 98–99, 92 S.Ct. 2286, 2291–92, 33 L.Ed.2d 212 (1972). The State can demonstrate none. Police solicitation for a memorial to the slain is no less inherently coercive than police solicitation for any other worthy cause. *Id.* at 100, 92 S.Ct. at 2292–93 (peaceful non-labor picketing no more disruptive than peaceful labor picketing). The State has impermissibly chosen among causes for which it will lift its heavy burden on free-speech interests. *Id.* at 97–98, 92 S.Ct. at 2291–92.

## VI. RELIEF

The plaintiffs seek declaratory and injunctive relief as well as attorney's fees. All three requests should be granted. Declaratory relief is a matter of discretion. *See, e.g., Hibernia Sav. Bank v. Ballarino*, 891 F.2d 370, 372 (1st Cir.1989). A declaratory judgment is appropriate when it will "'serve a useful purpose in clarifying the legal relations in issue' or 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *President v. Vance*, 627 F.2d 353, 364 n. 76 (D.C.Cir. 1980) (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). A declaration of the invalidity of § 3702 will not only end these parties' dispute but also properly challenge the State to rethink the mechanisms by which it might pursue its legitimate goal of protecting the integrity of law enforcement.

Further, the plaintiffs are entitled to a permanent injunction against the enforcement of § 3702 as now drafted. The First Circuit Court of Appeals enumerates three preconditions to permanent injunctive relief. The plaintiff must (1) demonstrate direct injury, (2) succeed on the merits, if alleging past unlawful conduct and (3) show "continuing irreparable injury for which there is no adequate remedy at law." *Lopez v. Garriga*, 917 F.2d 63, 67–68 (1st Cir.1990). The plaintiffs here have sustained crippling injury to their ability to publish magazines. Two of the plaintiff unions offer uncontroverted testimony, and I find as a fact, that they have abandoned publication as a result of the Act. Exh. C to Stipulated Facts (Affidavit of Plaintiff Auburn Police Union) ¶ 6; Exh. D to Stipulated Facts (Affidavit of Plaintiff Portland Police Benevolent Association) ¶ 5. An official of the third plaintiff union avers, and I find as a fact, that the union will be unable to publish its magazine as a result of the Act. Exh. H to Stipulated Facts (Affidavit of Plaintiff David B. Chamberlain) ¶¶ 4–5. The plaintiffs also fulfill the second criterion of success on the merits of their attack on the Act's constitutionality. Finally, money damages cannot adequately compensate for the impermissible burden on the plaintiffs' freedom of expression.

42 U.S.C. § 1988 allows a court to award, "in its discretion," reasonable attorney's fees to the prevailing party in an action under 42 U.S.C. § 1983. The statute's discretionary language is misleading, for "it is well-established that a court may not deny an award of attorney's fees to a prevailing civil rights plaintiff in the absence of special circumstances rendering the award unjust...." *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir., 1990) (citation omitted). Indeed, the First Circuit "requires findings of fact and conclusions of law identifying the special circumstances and explaining why an award would be inappropriate...." *Id.* (citations omitted). There being no evidence whatsoever of any such special circumstances here, attorney's fees must be awarded.

## VII. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT the plaintiffs' motion, and DENY the defendant's motion, for judgment on the basis of a stipulated written record. The court should per-

manently enjoin enforcement of 25 M.R.
S.A. § 3702, declaring it unconstitutional
on grounds it is facially overbroad, oper-
ates as an impermissible prior restraint and
violates the plaintiffs' right to equal protec-
tion of the laws. Finally, I recommend
that attorney's fees be awarded to plain-
tiffs pursuant to 42 U.S.C. § 1988.

## NOTICE

*A party may file objections to those
specified portions of a magistrate's re-
port or proposed findings or recom-
mended decisions entered pursuant to 28
U.S.C. § 636(b)(1)(B) for which de novo
review by the district court is sought,
together with a supporting memoran-
dum, within ten (10) days after being
served with a copy thereof. A responsive
memorandum shall be filed within ten
(10) days after the filing of the objection.*

*Failure to file a timely objection shall
constitute a waiver of the right to de novo
review by the district court and to appeal
the district court's order.*

*Dated at Portland, Maine this 21st day
of December, 1990.*